[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12114

_____

D. C. Docket No. 03-00387-CV-GET-1

CAMP LEGAL DEFENSE FUND, INC.,

Plaintiff-Appellant,

versus

CITY OF ATLANTA,
GREG PRIDGEON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 13, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

This appeal by the Coalition for the Abolition of Marijuana Prohibition of a

judgment regarding the Atlanta Outdoor Festivals Ordinance of 2003 presents two threshold issues of justiciability, involving standing and mootness, and issues about whether the Festivals Ordinance violates constitutional guarantees of free speech. The key issue is whether, under the overbreadth doctrine, CAMP may challenge, under the free speech clause of the First Amendment, provisions of the Festivals Ordinance that do not either apply to or affect its activities. We recently confronted this issue en banc in Tanner Advertising Co. v. Fayette County, but did not resolve it because all but one of the claims for relief in that appeal were rendered moot by a repeal of the challenged ordinance. ___ F.3d ___, No. 04-13210 (11th Cir. June 9, 2006) (en banc). We left this "issue for another day." Id. at *32. That day has arrived.

The Festivals Ordinance requires an individual or organization to obtain a permit to hold an outdoor festival in Atlanta. Atlanta Outdoor Festivals Ordinance of 2003, Atlanta, Ga. Ord. §§ 138-186–138-209. An outdoor festival, in contrast with traditional parades or other assemblies in parks or streets, involves the erection of stages, barricades, tents, booths, or other temporary structures, and may include entertainment and sales of food and merchandise. Id. § 138-187. On January 2, 2003, CAMP was unable to apply for a permit because Atlanta imposed a moratorium on the issuance of permits from November 27, 2002, to January 13,

2

2003. CAMP filed a complaint that alleged that several provisions of the Festivals Ordinance violate its rights of free speech under the United States Constitution and Georgia Constitution. The district court granted partial summary judgments to both Atlanta and CAMP regarding several provisions and concluded, after a bench trial, that other provisions were constitutional.

In all, this appeal raises four issues: (1) whether CAMP has standing to challenge provisions of the Festivals Ordinance that do not affect its activities, (2) whether the challenge by CAMP to the moratorium on festival permits is moot because the moratorium has expired, (3) whether provisions of the Festivals Ordinance violate the First Amendment of the United States Constitution, see U.S. Const. Amend. I, and (4) whether provisions of the Festivals Ordinance violate the Georgia Constitution, see Ga. Const. art. 1 § 1 ¶ 5. Our review of these issues involving these parties is familiar territory. See CAMP v. City of Atlanta, 219 F.3d 1301, 1305 (11th Cir. 2000).

As to all but one of the provisions of the Festivals Ordinance before us, we either lack jurisdiction to consider the challenge by CAMP or affirm the judgment in favor of Atlanta. Because CAMP lacks standing to challenge provisions of the Festivals Ordinance that do not apply to its activities, see Festivals Ordinance §§ 138-205, -207(b)(7), (b)(8), and the overbreadth doctrine does not provide an

3

exception to the requirements of constitutional standing, we vacate and remand with instructions to dismiss in part. We also conclude that the complaint of CAMP regarding the denial of its application for a permit during the moratorium is not moot, because CAMP requested damages for that alleged violation. As to six provisions, we affirm in part the judgment in favor of Atlanta: neither the ability of city officials to comment on the permit application, see id. §§ 138-201(21), -202, nor the ability of the Chief of Staff to impose special limitations on certain neighborhoods, see id. § 138-201A(d), grant unbridled discretion to city officials in violation of the First Amendment; and the ninety-day advance application requirement, see id. § 138-201, the liability insurance requirement, see id. § 138-205(e), and the moratorium do not impose prior restraints that violate either the United States Constitution or the Georgia Constitution. Because the remaining provisions regarding the exemption for city-sponsored events grant unbridled discretion to city officials, see id. § 138-187, -188, we reverse and remand in part.

## I. BACKGROUND

To explain the context of this appeal, we address two matters. We first review the operation of relevant provisions of the Festivals Ordinance. We then review the litigation that led to this appeal.

4

## A. The Festivals Ordinance

The Atlanta Outdoor Festivals Ordinance of 2003 governs the permits, location, size, and fees of public gatherings in the City of Atlanta. Festivals Ordinance §§ 138-186–138-209. The Festivals Ordinance requires "[a]ny person or organization desiring to hold an outdoor festival [to] make application for a permit to hold such event . . . no later than ninety [] days prior to the date of the festival." Id. § 138-201. Although the Festivals Ordinance does not "prevent members of the public from assembling in the parks or streets . . . without holding an outdoor festival permit," those without a permit may not "erect stages, barricades, utility poles, booths, tents or other temporary structures . . . ." Id. § 138-209. The Festivals Ordinance also exempts "city-sponsored events" from the permitting requirements. Id. § 138-188. A "[c]ity-sponsored event means a public event that is directly related to a recognized function of city government and which is in major part initiated, financed, and executed by the City." Id. § 138-187.

Under the Festivals Ordinance, the Chief of Staff of Atlanta decides whether to grant or deny a permit within 45 days of the date of application. Id. § 138-203(A). The Chief of Staff may consult with the Commissioner of Parks, Recreation and Cultural Affairs, and the Chief of Police and "designate certain Festival Districts as having special limitations . . . if in the opinion of the Chief of

5

Staff there are special considerations . . . such as traffic, public safety," etc.  Id. §

138-201A(d).  Neighborhood Planning Units, city council members, the

Departments of Police, Fire, Public Works, Parks, Recreation and Cultural Affairs,

and the Bureau of Buildings may also submit comments about the proposed

festival.  Id. § 138-202.

The Chief of Staff considers several criteria when deciding whether to grant

or deny a permit.  Id. §§ 138-203(b), -204.  For instance, the Chief of Staff "may

deny a permit to an applicant who has failed to complete payment of any sums

required for a previously permitted festival until such time as payment is received .

. . ."  Id. § 138-203(b)(7).  The Chief of Staff also may "deny a permit to an

applicant who has failed to substantially perform a cleanup plan which was made a

condition of a previous permit . . . ."  Id. § 138-203(b)(8).  A permit may be denied

if the "internal security plan" submitted by the applicant does not "show that all

off-duty law enforcement personnel to be used for internal security will be POST-

certified."  Id. § 138-203(b)(5).  The Festivals Ordinance does not define "POST-

certified," but "POST-certified" refers to the requirements of the Peace Officer

Standards and Training Act of Georgia.  O.C.G.A. §§ 35-8-1 to 35-8-25.

The applicant must include twenty-three items to apply for the permit.

Festival Ordinance §§ 138-201(1)–(23).  One item is "[a] certification by [the]

6

applicant that a Notice of Intent to Hold a Festival has been sent by registered mail or by hand delivery to all City Council members . . . and all Neighborhood Planning Units affected by the festival . . . ." Id. § 138-201(21). The Festivals Ordinance also requires that "[a]n applicant shall be required to furnish a fully paid public liability damage insurance policy procured from a company licensed to do business in Georgia" for outdoor festivals of over 10,000 estimated attendees. Id. § 138-205(e), see id. § 138-205(b). The amount of insurance required is "$1,000,000 bodily injury total," "$500,000 bodily injury to any one person," and "$100,000 property damage." Id. § 138-205(e).

The applicant is required to pay fees to hold a festival. The Festivals Ordinance imposes application and permit fees based upon the size of the festival and whether the festival is "commercial" or "noncommercial." Id. §§ 138-205(c), (d). Under the Festivals Ordinance, "[c]ommercial means any part of the net earnings of the outdoor festival inures to the benefit of any private shareholder, individual or for-profit corporation . . . ." Id. § 138-187. "Noncommercial means any festival organized and operated for charitable, religious, scientific, literary, or educational purposes . . . or where no part of the net earnings of which inures to the benefit of any private shareholder, individual or for-profit corporation . . . ." Id. § 138-187.

7

Since it enacted the first Festivals Ordinance in 1983, Atlanta has amended the Festivals Ordinance several times. When it amended the Festivals Ordinance in 2003, Atlanta imposed a moratorium on festival permit applications from November 27, 2002, until January 13, 2003, when the new ordinance would become effective.

*B. The History of This Litigation*

CAMP is a Georgia corporation that "endeavors to put on a political demonstration promoting the reform of marijuana laws." CAMP has organized the "Great Atlanta Pot Festival [], a direct action event advocating changes in the laws governing marijuana." CAMP, 219 F.3d at 1305. On January 2, 2003, during the moratorium, CAMP attempted to apply for a festival permit, but was denied because Atlanta did not accept applications for permits until the 2003 Festivals Ordinance took effect. On January 16, 2003, CAMP applied for a permit to hold a festival on April 20, 2003, and Atlanta granted the permit. CAMP also received a permit and held a festival in 2004.

After the city refused to accept the permit applications of CAMP during the moratorium, CAMP filed suit and alleged that the Festivals Ordinance violated the First Amendment of the United States Constitution as incorporated to the states by the Fourteenth Amendment, see U.S. Const., Amend. I; U.S. Const. Amend. XIV,

and Article I of the Georgia Constitution, see Ga. Const. art. 1, § 1, ¶ 5. CAMP contended that several provisions of the Festivals Ordinance granted unbridled discretion to government officials, see Festivals Ordinance §§ 138-188, 138-202, 138-207; and several provisions, including the moratorium on permits, were unconstitutional prior restraints of speech, see id. §§ 138-201, -201A, -203(4), (5), (12), -201B, -205, -209. CAMP requested "actual and presumed damages" in the amount of $25,000.

Both parties filed motions for partial summary judgment with evidence to support their arguments. Atlanta submitted a "Statement of Material Undisputed Facts" that included the 1994 Festivals Ordinance, the 2000 Festivals Ordinance, the 2003 Festivals Ordinance, the decision of the district court regarding a previous challenge by CAMP to the 1994 Festivals Ordinance, CAMP v. City of Atlanta, 1:96-CV-407A-JEC (N.D. Ga. April 9, 1999), and the decision of this Court in that previous litigation, CAMP, 219 F.3d at 1301. Atlanta "requested that the Court take judicial notice of the record and judgment" in that previous challenge by CAMP.

The district court granted partial summary judgments to both CAMP and Atlanta regarding different provisions of the Festivals Ordinance. In granting partial summary judgment to CAMP, the district court concluded that the Festivals

9

Ordinance (1) did not tailor the size restrictions for the number of allowable Class C Festivals, see id. § 138-201A(c); (2) granted unbridled discretion to "Festival Monitors" to revoke permits, see id. § 138-201B; and (3) granted unbridled discretion to the Chief of Staff to revoke permits if he had "good cause to believe that [a violation] may occur in the proposed festival," see id. § 138-203(b)(10). The district court denied partial summary judgment to CAMP on several other provisions, see id. §§ 138-187, -188, -201, -201(c), -201A(d), -203(b)(5), -203(b)(7), (b)(8), -205(c),(d), -209.

The district court granted partial summary judgment in favor of Atlanta regarding several provisions of the Festivals Ordinance because the district court concluded that those provisions did not violate either the First Amendment or the Georgia Constitution. The district court concluded that the fee structure was content-neutral, see id. § 138-205, because the fee structure "is not contingent upon the nature of the message to be conveyed . . . ." The court also concluded that a provision which allows the public to assemble in parks or speak "without holding an outdoor festival permit" did not discriminate between types of non-commercial speech. See id. §§ 138-209, -188. The district court ruled that the Festivals Ordinance did not grant unbridled discretion to the Chief of Staff to impose special requirements on certain neighborhoods or consult with city council members and

10

Neighborhood Planning Units, see id. §§ 138-201A(d), -201(21), -202, because "the special limitations would be available for review by the applicants prior to their submission of a permit application." The court determined that the liability insurance required by the Festivals Ordinance was constitutional, see id. § 138-205(e), because the amount of insurance is "not influenced by the nature of the event or its potential for controversial expressive activity, but rather [is] based only on the size of the event." The court upheld provisions in the Festivals Ordinance that allowed the Chief of Staff to revoke or deny a permit if the applicant failed to pay certain fees, see id. § 138-203(b)(7), (8), because the Supreme Court had upheld a similar provision in Thomas v. Chicago Park District, 534 U.S. 316, 122 S. Ct. 775 (2002). Finally, the district court concluded the moratorium was constitutional because it "applied equally to all applicants and was content-neutral."

The district court concluded that CAMP had failed to establish that the exemption for city-sponsored events violates either the First Amendment or the Georgia Constitution. The court found that the exemption was constitutional because "there is no evidence that a government event has impermissibly preempted private speech." See id. § 138-188. Although CAMP argued that the provision may grant Atlanta unbridled discretion to co-sponsor an event, the court

11

reasoned that "the issue of co-sponsorship is not properly before the court on this facial challenge of the ordinance and is not considered at this time."

The district court granted summary judgment to Atlanta regarding the 90-day advance application requirement under the First Amendment, but determined that a genuine issue of material fact existed as to whether the provision was "the least restrictive means" under the Georgia Constitution. As to the claim under the First Amendment, the court reasoned that the "90-day application period allows the City to manage effectively and efficiently the use of its resources, not to prevent festivals with a message disapproved by the city," but to address "an ever-increasing number of demands [that] are being made upon City resources and infrastructure" (quoting id. § 138-186(b)). See id. § 138-201.

The district court held a bench trial to determine (1) whether the ninety-day advance application provision violated the Georgia Constitution, see id. § 138-201, (2) whether the fee structure of the Festivals Ordinance was "nominal," see id. § 138-205, and (3) whether requiring POST-certified security guards was the "least restrictive possibility" under Georgia law, see id. § 138-203(b)(5). Several Atlanta city officials testified about the purpose and need for the 90-day advance application provision, the fee structure, and the requirement that security guards be POST-certified, see id. § 138-203(b)(5). Walter Imara Canady, the Special Events

12

Manager who oversees the permitting process, testified that the city must grant or deny a permit 45 days before the start of the festival. Canady testified that 45 days was necessary to allow the Chief of Staff time to review the permit application and the Fire, Police, and Sanitation Departments to consider the proposed security plan of the festival. Canady also testified that "larger scale festivals" and "first time festivals" require more time to review. Canady stated that the 45-day review process was "absolutely" necessary.

CAMP presented testimony from Paul Cornwell, the director and CEO of CAMP. Cornwell testified that he was unable to retain POST-certified officers. He also stated that the 90-day advance application provision affected his ability to organize festivals that respond to recent decisions from the Supreme Court, such as "whether medical marijuana should be considered states' rights . . . or possibly the Federal Sentencing Guidelines." Cornwell stated that the provision also hindered his ability to invite speakers and entertainers because "[m]ost entertainers and speakers don't make their calendar 90 days out." Cornwell also testified that "normally" he has stages, amplification, and vendors at his festivals.

At the end of the bench trial, the district court concluded that the provision requiring festival security guards to be POST-certified was unconstitutional under the Georgia Constitution because "it was impossible for the plaintiff to satisfy this

13

requirement." The district court also concluded that the ninety-day advance application provision was "the least restrictive method" under the Georgia Constitution and the fee structure did not violate the United States and Georgia Constitutions because "the city clearly spends more in administering the ordinance in question than the amount of fees the city collects." The district court awarded CAMP $500 in nominal damages.

CAMP appeals both the adverse partial summary judgment and the judgment following the bench trial. Atlanta does not appeal any adverse rulings.

## II. STANDARD OF REVIEW

Our standard of review is the same for each issue presented in this appeal. We review standing determinations de novo. Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir.), cert. denied, ___ U.S. ___, 126 S. Ct. 377 (2005). We review the question of mootness de novo. Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004) (quoting Christian Coal. of Ala. v. Cole, 355 F.3d 1288, 1290 (11th Cir. 2004)). We review grants of summary judgment de novo. State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1229 (11th Cir. 2004) (citing Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1283 (11th Cir. 2003)). We review "the district court's determination of the 'constitutional facts' in a First Amendment case de novo." CAMP, 219 F.3d at

14

1316 (quoting <u>Falanga v. State Bar of Ga.</u>, 150 F.3d 1333, 1335 (11th Cir. 1998)).

### III. DISCUSSION

Before we can address the arguments of CAMP that several provisions of the Festivals Ordinance either are unconstitutional prior restraints or grant unbridled discretion to city officials, we must consider issues about our jurisdiction. We first address whether CAMP has standing to challenge these provisions. We next consider whether the challenge by CAMP to the moratorium is moot because the moratorium on permit applications is no longer in effect.

We then turn to the merits of the challenge by CAMP to provisions of the Festivals Ordinance. We first address arguments by CAMP that provisions of the Festivals Ordinance grant unbridled discretion to city officials in violation of the First Amendment of the United States Constitution. We then consider arguments that provisions of the Festivals Ordinance impose prior restraints that violate either the First Amendment of the United States Constitution or Article I of the Georgia Constitution.

*A. CAMP Has Standing to Challenge Only Provisions That Govern Its Activities.*

Before oral argument, Atlanta moved to dismiss this appeal on the ground that CAMP lacks standing to challenge provisions of the Festivals Ordinance, and we ordered CAMP to respond to that motion. CAMP responded that, under the

15

overbreadth doctrine, it has standing to challenge any provision of the Festivals Ordinance. Because standing is jurisdictional, we must address this issue before we address any aspect of the merits of the complaint filed by CAMP.

Our discussion of the issue of standing is divided into three parts. We first review the legal requirements of constitutional standing and why the overbreadth doctrine does not provide an exception to those requirements. Second, we address whether CAMP has standing to challenge provisions of the Festivals Ordinance that allegedly grant unbridled discretion to officials of Atlanta. Third, we address whether CAMP has standing to challenge provisions of the Festivals Ordinance that allegedly impose prior restraints on speech.

### 1. CAMP Must Satisfy the Requirements of Constitutional Standing, for Which the Overbreadth Doctrine Provides No Exception.

The Constitution of the United States limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. Art. III § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the

16

merits of a plaintiff's claims," Bochese, 405 F.3d at 974, and "the court is powerless to continue," Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999).

"[T]he irreducible constitutional minimum of standing contains three elements." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136. A plaintiff who invokes the jurisdiction of a federal court bears the burden to show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." Granite State Outdoor Adver., Inc. v. City of Clearwater, 351 F.3d 1112, 1116 (11th Cir. 2003). Each element is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561, 112 S. Ct. at 2136.

"An 'injury in fact' requires the plaintiff to 'show that he personally has suffered some actual or threatened injury.'" Clearwater, 351 F.3d at 1117 (emphasis omitted) (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982)). Although "general factual allegations of injury resulting from the defendant's

17

conduct may suffice" at the pleading stage, a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" to prove standing at the final stage of litigation. Lujan, 504 U.S. at 561, 112 S. Ct. at 2137 (quoting Fed. R. Civ. P. 56(e)). "If . . . the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." Warth, 422 U.S. at 501–02, 95 S. Ct. at 2207. These immutable requirements of the Constitution govern the complaint of CAMP.

CAMP contends that, under the overbreadth doctrine, a plaintiff who has suffered injury under one provision of the Festivals Ordinance has standing to challenge the entire ordinance. CAMP argues that because it was unable to apply for a permit during the moratorium, it has established Article III standing under the overbreadth doctrine to challenge provisions that allow the Chief of Staff to deny a permit if the applicant has failed to pay fees or perform a cleanup plan, see Festivals Ordinance § 138-207(b)(7), (8); and impose higher permit fees for commercial events than noncommercial events, see id. § 138-205. **[Id.]** This argument fails.

The overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing, which requires that "the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." Warth, 422 U.S. at 499, 95 S. Ct. at 2205 (internal quotations and citations omitted). The

18

overbreadth doctrine is an exception to the prudential standing prohibition against jus tertii claims. Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956–57, 104 S. Ct. 2839, 2847 (1984). Under the overbreadth doctrine, CAMP may mount a facial challenge—as opposed to an as-applied challenge—to provisions of the Festivals Ordinance that affect its activities.

"Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." Valley Forge Christian Coll., 454 U.S. at 474, 102 S. Ct. at 759. The Supreme Court has articulated three prudential standing requirements that allow courts to refuse the exercise of their jurisdiction. Warth, 422 U.S. at 499, 95 S. Ct. at 2205. "[T]he Court has said that other justiciability doctrines are derived not from the Constitution, but instead from prudent judicial administration." Erwin Chemerinsky, Federal Jurisdiction § 2.1, at 44. First, "the plaintiff's complaint [must] fall[] within the zone of interests protected by the statute or constitutional provision at issue." Bischoff v. Osceola County, 222 F.3d 874, 883 (11th Cir. 2000). Second, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Warth, 422 U.S. at 499, 95 S. Ct. at 2205. Third, "the plaintiff generally must assert his own legal rights and

19

interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. Unlike the standing requirements of the Constitution, the prudential requirements are "essentially [a] matter[] of judicial self-governance." Id. at 499–500, 95 S. Ct. at 2205.

The overbreadth doctrine is an exception to the third requirement of prudential standing. Clearwater, 351 F.3d at 1116 (citing Bischoff v. Osceola County, 222 F.3d 874, 884 (11th Cir. 2000)). The overbreadth doctrine allows "[l]itigants . . . to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S. Ct. 2908, 2916 (1973). Under the doctrine, a party may bring a First Amendment case asserting the rights of third parties if "a statute is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court." Broadrick, 413 U.S. at 613, 93 S. Ct. at 2916 (emphasis added). A plaintiff who has established constitutional injury under a provision of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision.

New York v. Ferber illustrates the distinction between an as-applied challenge and a facial challenge under the overbreadth doctrine. 458 U.S. 747, 102 S. Ct. 3348 (1982). The Supreme Court in Ferber considered whether to allow a bookseller, who was prosecuted for the sale of child pornography to undercover police officers, to challenge facially a New York statute that prohibited "promoting a sexual performance by a child." Id. at 751, 102 S. Ct. at 3351. The bookseller did not contend that his sale of obscene materials to undercover officers was protected speech under the Constitution; in other words, he did not question that the New York obscenity statute, as applied to him, was constitutional. Id. at 760, 102 S. Ct. 3356. The bookseller argued instead that the provision of the New York obscenity statute that was applied to him was overbroad because it proscribed the constitutionally-protected speech of parties not before the court. Id. The Supreme Court stated that the overbreadth doctrine "allow[s] persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." Id. at 769, 102 S. Ct. at 3361. The Supreme Court concluded that the overbreadth doctrine did not allow the bookseller to bring the facial challenge because the New York statute was not "substantially overbroad." Id. at 773, 102 S. Ct. at 3363.

Ferber illustrates how the overbreadth doctrine allows a plaintiff, who has

21

suffered injury under one provision, to challenge that provision on facts other than those that apply to the plaintiff. Although the plaintiff's speech may not be constitutionally protected, the overbreadth doctrine allows the plaintiff to champion the free speech rights of parties not before the court to establish that a provision is unconstitutionally overbroad. See Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S. Ct. 1116, 1121 (1965). The overbreadth doctrine allows plaintiffs to bring a facial challenge to the provisions under which the plaintiff suffered an "injury in fact." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136; see Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 392, 108 S. Ct. 636, 642 (1988).

The overbreadth doctrine provides an exception to the ordinary prudential considerations of judicial administration, not an exception to the irreducible requirements of the Constitution. "Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself." Warth, 422 U.S. at 501, 95 S. Ct. at 2206; see Erwin Chemerinsky, Federal Jurisdiction § 2.1, at 44 ("[T]he Court has said that other justiciability doctrines are derived not from the Constitution, but instead from prudent judicial administration."); Michael C. Dorf, Facial Challenges to State and Federal Statutes, 46 Stan. L. Rev. 235, 247 (1994) ("Prudential considerations cannot, of course, trump constitutional ones."). The overbreadth doctrine, which is judicially created, cannot alter the requirements

of standing, under Article III, because the Judiciary cannot abrogate the Constitution. Gladstone v. Village of Bellwood, 441 U.S. 91, 100, 99 S. Ct. 1601, 1608 (1979); Bischoff v. Osceola County, 222 F.3d 874, 884 (11th Cir. 2000).

"[E]ven under the more lenient requirements for standing applicable to First Amendment overbreadth challenges, it still remains the law that plaintiffs must establish that they have suffered some injury in fact as a result of the defendant's actions." Bischoff, 222 F.3d at 884. Constitutional standing is a "threshold question in every federal case" mandated by the Constitution, while prudential standing is "essentially [a] matter[] of judicial self-governance." Warth, 422 U.S. at 499–500, 95 S. Ct. at 2205 (emphasis added). "[N]either the counsels of prudence nor the policies implicit in the 'case or controversy' requirement should be mistaken for the rigorous Art. III requirements themselves." Valley Forge Christian Coll., 454 U.S. at 475, 102 S. Ct. at 760; see Harp Adver., Ill., Inc. v. Chi. Ridge, 9 F.3d 1290, 1292 (7th Cir. 1993) (stating that application of the overbreadth doctrine "does not imply . . . that the requirement of standing to sue has been elided").

The argument of CAMP that constitutional standards may be altered in the First Amendment context erroneously implies that the freedom of speech holds a more favored position in the arsenal of constitutional rights than, for example, the

23

free exercise of religion, U.S. Const. Amend. I; see, e.g., Valley Forge Christian Coll., 454 U.S. at 472, 102 S. Ct. at 752 (requiring constitutional standing to vindicate the free exercise of religion), the right to be free from unreasonable searches and seizures, U.S. Const. Amend. IV; see, e.g., United States v. Padilla, 508 U.S. 77, 80, 113 S. Ct. 1936, 1938 (1993) (requiring an "expectation of privacy" for standing to challenge a search and seizure), or any other right guaranteed by the Constitution. "We know of no principled basis on which to create a hierarchy of constitutional values or a complementary 'sliding scale' of standing which might permit respondents to invoke the judicial power of the United States." Valley Forge Christian Coll., 454 U.S. at 484, 112 S. Ct. at 765. The Supreme Court accordingly has rejected the "view of standing under which the Art. III burdens diminish as the 'importance' of the claim on the merits increases." Id. The overbreadth doctrine, when applied in First Amendment challenges, cannot subsume the constitutional limit on federal courts to "Cases" and "Controversies" imposed by Article III. See U.S. Const., Art. III § 2.

CAMP contends that it has standing under Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 505 n.11, 101 S. Ct. 2882, 2891 n.11 (1981) (plurality opinion). The Supreme Court in Metromedia ruled that an outdoor advertising company with "commercial interests" could "challenge the facial validity of a

24

statute on the grounds of its substantial infringement of the First Amendment interests of others." Id. The outdoor advertising company in Metromedia alleged "that enforcement of the sign ordinance will eliminate the outdoor advertising business in San Diego and that the First and Fourteenth Amendments prohibit the elimination of this medium of communication." Id. at 503–04, 101 S. Ct. at 2890.

The reliance by CAMP on Metromedia is misplaced because the facial challenge in Metromedia is distinguishable from this challenge. Metromedia would have suffered an injury because the ordinance indubitably threatened imminent harm to its commercial interests by obliterating its business. Cf. Singleton v. Wulff, 428 U.S. 106, 114, 96 S. Ct. 2868, 2874 (1976) (holding that doctors in abortion clinics had standing to challenge a city ordinance that impinged on a woman's right to an abortion). Metromedia had alleged that it was harmed by the sign ordinance because the "enforcement of the ordinance will eliminate the outdoor advertising business in San Diego." Id. at 503–04, 101 S. Ct. at 2890 (emphasis added). In contrast with Metromedia, CAMP does not allege a concrete commercial harm apart from the delay caused by the refusal to accept its applications, and there is no suggestion in the record that every provision of the Festivals Ordinance pertains to every activity of CAMP.

Our conclusion that CAMP may challenge only provisions of the Festivals

25

Ordinance that affect its activities is consistent with case law from the Supreme Court and our sister circuits. The Supreme Court has refused to consider challenges to provisions of a statute where "[e]xamination of the record [] reveals that no party has standing to challenge the provision." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 233, 110 S. Ct. 596, 609 (1990), overruled in part on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC, 541 U.S. 774, 124 S. Ct. 2219 (2004). In FW/PBS, various adult-related businesses raised a facial challenge to a Dallas ordinance that regulated "sexually oriented businesses." Id. at 220–21, 110 S. Ct. at 602–03. The businesses challenged several provisions of the ordinance, id., including a "civil disability provision" that "prohibit[ed] the issuance of a license to an applicant who has resided with an individual whose license application has been denied or revoked within the preceding 12 months" and individuals who had been "convicted of certain enumerated crimes" and their spouses, id. at 231–32, 110 S. Ct. at 608. Although the Supreme Court considered challenges to some provisions, the Court did "not reach the merits of the adult entertainment and adult cabaret petitioners' challenges to the civil disability provision." Id. at 230, 110 S. Ct. at 607. The Court stated that "the record does not reveal that any party before us was living with an individual whose license application was denied or whose license was revoked." Id. at 233, 110 S. Ct. at

26

609.  The Court likewise stated that "the record does not reveal any party who has standing to challenge the provision disabling an applicant who was convicted of any of the enumerated crimes."  Id. at 234, 110 S. Ct. at 609.

FW/PBS forecloses the argument by CAMP that injury under one provision is sufficient to confer standing on a plaintiff to challenge all provisions of an allegedly unconstitutional ordinance.  Although the Supreme Court considered challenges to some provisions of the ordinance, see id. at 223, 110 S. Ct. at 603, the Court refused to consider challenges to provisions that did not imminently affect the plaintiffs, id. at 233–34, 110 S. Ct. at 609.  The Court reaffirmed the "independent obligation" of federal courts to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute.  Id. at 231, 110 S. Ct. at 607.  We and our sister circuits have followed FW/PBS to require a plaintiff to establish injury in fact as to each provision, even under the overbreadth doctrine.  See, e.g., Brazos Valley Coal. for Life v. City of Bryan, 421 F.3d 314 (5th Cir. 2005); Lamar Adver. of Pa., LLC v. Town of Orchard Park, 356 F.3d 365 (2d Cir. 2004) (stating the plaintiff had demonstrated injury as to all provisions of the challenged sign ordinance in its complaint); Clearwater, 351 F.3d at 1117; Gospel Missions of Am. v. City of Los Angeles, 328 F.3d 548, 553–55 (9th Cir. 2003) (analyzing constitutional standing

27

requirements before granting overbreadth standing); <u>Clark v. Lakewood</u>, 259 F.3d 996, 1006 (9th Cir. 2001) ("A plaintiff may have standing to challenge some provisions of a law, but not others.").

The overbreadth doctrine allows CAMP to mount a facial challenge to provisions of the Festivals Ordinance that harm its ability to hold a festival. CAMP "may challenge a statute by showing that it substantially abridges the First Amendment rights of parties not before the court" although its own activities are not constitutionally protected. <u>Metromedia, Inc.</u>, 453 U.S. at 505 n.11, 101 S. Ct. at 2891 n.11; <u>see</u> <u>Broadrick</u>, 413 U.S. at 612, 93 S. Ct. at 2916. Nothing in the overbreadth doctrine allows CAMP to challenge provisions wholly unrelated to its activities. CAMP "must show that [it] has sustained or is immediately in danger of sustaining a direct injury as the result of" each provision in the Festivals Ordinance. <u>Laird v. Tatum</u>, 408 U.S. 1, 13, 92 S. Ct. 2318, 2325 (1972) (quoting <u>Ex parte Levitt</u>, 302 U.S. 633, 634, 58 S. Ct. 1, 1 (1937)).

CAMP argues that several provisions of the Festivals Ordinance are unconstitutional, but CAMP must establish "by affidavit or other evidence," <u>Lujan</u>, 505 U.S. at 561, 112 S. Ct. at 2137, that every challenged provision affects CAMP. CAMP argues that the Festivals Ordinance grants unbridled discretion to city officials, <u>see</u> Festivals Ordinance §§ 138-201(21), -201A(d), -202, -188, the

28

Festivals Ordinance imposes unconstitutional prior restraints on speech, see id. §§ 138-207(b)(7),(8), -201, -205, and the moratorium on festival permit applications was an unconstitutional prior restraint. We next discuss which of these challenges CAMP has standing to maintain.

### 2. Whether CAMP Has Standing to Challenge Provisions That Allegedly Grant Unbridled Discretion to City Officials?

What a plaintiff must prove to establish standing "depends on the nature of the challenge to his or her standing." Bochese, 405 F.3d at 976. The Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755–56, 108 S. Ct. 2138, 2143 (1988). The challenged provision "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." Id. at 758, 108 S. Ct. at 2145. If it is "one who is subject to," id. at 755, 108 S. Ct. at 2143, or imminently will be subject to, the provisions that allegedly grant unbridled discretion, then CAMP has standing to challenge these provisions.

CAMP argues that the Festivals Ordinance grants unbridled discretion to

29

city officials because it (1) requires a festival permit applicant to give notice about the festival to city council members and Neighborhood Planning Units, see id. § 138-201(21); (2) allows the Chief of Staff to impose "special limitations" on an event if "there are special considerations warranting such limitations," see id. § 138-201A(d); (3) allows city officials to submit comments about the festival permit applications, see id. § 138-202; and (4) exempts city-sponsored events, see id. § 138-188. CAMP argues that these provisions constitute delegated unbridled discretion because the Festivals Ordinance does not provide the criteria that the city officials may consider. CAMP argues that, because it has applied for permits and its future applications would be subject to these procedural regulations, it has standing to mount these challenges. We agree.

The evidentiary record establishes that CAMP would be affected by provisions of the Festivals Ordinance that require permit applicants to provide notice to Neighborhood Planning Units and city council members, see id. § 138-201(21), allow the Chief of Staff to impose "special limitations" on certain neighborhoods, id. § 138-201A(d), and allow city officials to comment on festival permit applications, see Festivals Ordinance § 138-202. CAMP undoubtedly would be subject to these procedural requirements whenever it submits an application. The record establishes that CAMP has applied for permits in the past,

see generally  CAMP, 219 F.3d 1301, 1305, and intends to apply for permits in the future.  That city officials have not yet exercised their discretion to refuse CAMP's proposed festivals is immaterial because it is the existence, not the imposition, of standardless requirements that causes CAMP injury.  See Thornhill v. Alabama, 310 U.S. 88, 97, 60 S. Ct. 736, 742 (1940).  Where a plaintiff alleges that a statute grants unbridled discretion, a plaintiff need only be "subject to" the provision to establish a constitutional injury.  City of Lakewood, 486 U.S. at 755-56, 108 S. Ct. at 2143.  Because CAMP has applied for a permit, CAMP has established that it is subject to these requirements.

CAMP also presented evidence that it is "one who is subject to" the exemption for city-sponsored events.  Lakewood, 486 U.S. at 755, 108 S. Ct. at 2143; see Festivals Ordinance §§ 138-187, -188.  CAMP submitted to an allegedly unconstitutional licensing scheme that imposed a requirement on speech that otherwise could be expressed without the threat of penalty.  See Lakewood, 486 U.S. at 755, 108 S. Ct. at 2143; Freedman v. Maryland, 380 U.S. 51, 56, 85 S. Ct. 734 (1965); see also Z.J. Gifts D-4, LLC, 541 U.S. 774, 124 S. Ct. 2219.  The Festivals Ordinance exempts from the permitting requirement events that are "in major part initiated, financed, and executed by the City."  Festivals Ordinance §§ 138-187, 138-188.  The provision fails to provide guidance about which events

31

will be awarded city approval and exemption from the licensing scheme. Because standardless licensing schemes are subject to "post hoc rationalizations by the licensing official and the use of shifting or illegitimate criteria," "it [is] difficult for courts to determine . . . whether the licensor is permitting favorable, and suppressing unfavorable, expression." Lakewood, 486 U.S. at 758, 108 S. Ct. at 2144. If CAMP satisfied the unknowable standards that govern Atlanta's decision to support an event, CAMP would not be subject to the strictures of the Festivals Ordinance. See Festivals Ordinance § 138-188. CAMP is unable to hold its desired festival without first applying for a permit because Atlanta, in its sole discretion, does not endorse "in major part" the event CAMP desired to hold.

Atlanta argues that CAMP lacks standing to challenge the governmental exemption because it has not been denied government sponsorship, but Atlanta confuses a constitutional injury with a constitutional violation. "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." Warth, 422 U.S. at 500, 95 S. Ct. at 2206. A plaintiff need not be denied a permit under an unconstitutional statute to establish an injury, Lakewood, 486 U.S. at 755–56, 108 S. Ct. at 2143, because standing is "not based upon any assumption that application for the license would be refused or would result in the imposition of other unlawful regulations," Thornhill, 310 U.S. at 97, 60 S. Ct. at

32

742.  "The mere fact that the City has not enforced the requirement . . . is not sufficient to remove this language from our consideration."  Dimmitt v. Clearwater, 985 F.2d 1565, 1571 (11th Cir. 1993).  CAMP has suffered constitutional injury from the governmental exemption; CAMP must either comply with the permitting scheme or face prosecution, while government-sponsored festival promoters need not comply at all.

### 3. Whether CAMP Has Standing to Challenge Provisions That Allegedly Impose Unconstitutional Prior Restraints?

CAMP also contends that the Festivals Ordinance imposes unconstitutional prior restraints on speech because it (1) allows the Chief of Staff to deny a permit if the applicant has failed to pay fees or perform a cleanup plan, see Festivals Ordinance § 138-207(b)(7), (8); (2) requires festival promoters to provide insurance coverage, see id. § 138-205(e); (3) imposes higher permit fees for commercial events than noncommercial events, see id. § 138-205; and (4) requires that the application be submitted "no later than ninety [] days prior to the date of the festival," see id. § 138-201.  CAMP also argues that the moratorium on festival permit applications was an unconstitutional prior restraint.

"[T]o establish an injury in fact under Lujan based upon chilled expression, the plaintiff[] must show 'that either (1) [it was] threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution.'"  Doe v.

33

Pryor, 344 F.3d 1282, 1287 (11th Cir. 2003) (quoting Pittman v. Cole, 267 F.3d 1269, 1283-84 (11th Cir. 2001)); accord Meese v. Keene, 481 U.S. 465, 473; 107 S. Ct. 1862, 1867 (1987).  Unlike challenges to provisions that allegedly grant unbridled discretion to city officials, challenges to prior restraints do not implicate concerns over "the use of shifting or illegitimate criteria," id., for every party that seeks a license.  In a challenge of a prior restraint on speech the plaintiff must establish that the challenged provision pertains to its activity, and not merely that it is "subject to the law."  City of Lakewood, 486 U.S. at 755–56, 108 S. Ct. at 2143.

CAMP lacks standing to challenge two of the five provisions as prior restraints. CAMP failed to present evidence that it has, or imminently will be, denied a permit for failure to pay fees or perform a cleanup plan.  See id. §§ 138-207(b)(7), (8).  CAMP also presented no evidence, "by affidavit or other evidence," that these provisions apply to the permits it seeks.  See Lujan, 504 U.S. at 560, 112 S. Ct. at 2136.  Because the record does not evidence an "actual or imminent" injury from these provisions, CAMP lacks standing to challenge them, and we lack jurisdiction to consider them.

CAMP also lacks standing to challenge the higher permit fees for commercial events.  CAMP concedes that Atlanta has consistently classified its events as "noncommercial" and the record is silent on whether CAMP would be

34

subject to the higher commercial fees in the future.  CAMP argues that "the moment [CAMP] tries to become commercial," it would be subject to the higher fees in the Festivals Ordinance, but this allegation is "conjectural." Id. at 560, 112 S. Ct. at 2136.  "[S]tanding cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'"  FW/PBS, Inc., 493 U.S. at 231, 110 S. Ct. at 608 (emphasis added) (citations omitted). Because CAMP failed to meet its burden to establish injury from the higher fees imposed on commercial events, we lack jurisdiction to consider the challenge as to those fees.

CAMP has standing to challenge the 90-day advance application provision, see Festivals Ordinance § 138-205, the liability insurance provision, see id. § 138-205(e), and the moratorium.  All that constitutional standing requires is that the provision of the ordinance applies to CAMP.  See Clearwater, 351 U.S. at 1117. The 90-day advance application requirement affected CAMP because it evidenced an intent to hold an outdoor festival that required a permit, and the record contains evidence that CAMP has had difficulty recruiting performers based on its inability to predict whether it would receive a festival permit 90 days in advance.

The liability insurance requirement also pertains to the activities of CAMP, because insurance is required for all festivals with an estimated attendance of over

35

10,000 people.  See id.  It is undisputed that previous events of CAMP have attracted up to 30,000 attendees.  See CAMP, 219 F.3d at 1306.  CAMP has also been unable to hold its desired festival because Atlanta did not accept permit applications during the moratorium.  These restraints on speech affected the ability of CAMP to hold a festival.

Although CAMP challenges several provisions of the Festivals Ordinance, the record establishes that provisions that grant unbridled discretion to city officials, see Festivals Ordinance §§ 138-187, -188, -201(21), -201A(d), -202, the 90-day advance application provision, see id. § 138-201, the liability insurance requirement, see id. § 138-205(e), and the moratorium have caused "a distinct and palpable injury to" CAMP, Gladstone, 441 U.S. at 100, 99 S. Ct. at 1608.

Because CAMP lacks standing to bring the other challenges, see Festivals Ordinance §§ 138- 205, 207(b)(7), (8), the district court "was without authority to decide the merits."  Bender v. Williamsport Area School Dist., 475 U.S. 534, 549, 106 S. Ct. 1326, 1335 (1986).  To prevent the judgment of the district court "from spawning any legal consequences," we partially grant the motion to dismiss by Atlanta, vacate the rulings of the district court regarding the challenges that CAMP lacks standing to bring, and remand with instructions to dismiss those challenges. United States v. Munsingwear, 340 U.S. 36, 41, 71 S. Ct. 104, 107 (1950); see

36

FW/PBS, 493 U.S. at 235–36, 110 S. Ct. at 610 (vacating with instructions to remand where the Court of Appeals addressed the merits, but the parties lacked standing to bring the challenge). We next address whether CAMP has maintained Article III standing through this appeal.

*B. The Challenge by CAMP to the Moratorium Is Not Moot.*

Atlanta also moved to dismiss the challenge by CAMP to the moratorium as moot because "the moratorium expired four years ago and has never been reinstituted." "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case" was filed. Burke v. Barnes, 479 U.S. 361, 363, 107 S. Ct. 734, 736 (1987). "[M]ootness is a justiciability doctrine that must be satisfied before we may decide a case." Clearwater, 351 F.3d at 1119. A case becomes moot "when a subsequent law brings the existing controversy to an end," CAMP, 219 F.3d at 1310 (citing Church of Scientology Flag Serv. Org., Inc. v. Clearwater, 777 F.2d 598, 605 (11th Cir. 1985)), but when the plaintiff "has requested damages . . . the changes made to the ordinance do not make th[e] case moot," Clearwater, 351 F.3d at 1119 (citing Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 571, 104 S. Ct. 2576, 2584 (1984)).

CAMP requested damages in its complaint about the moratorium and has preserved an argument about that claim for relief on appeal. Although Atlanta argues that "the district court has already awarded [CAMP] nominal damages for . . . the alleged delay CAMP suffered in the permit process as a result of the moratorium," the record belies this argument. The district court concluded the moratorium was constitutional and granted partial summary judgment to Atlanta, a decision that CAMP appeals. Because the moratorium issue is not moot, we deny in part the motion to dismiss by Atlanta. Having determined which of CAMP's challenges we have jurisdiction to consider, we now turn to the merits of that challenge.

### C. Whether Provisions That Allegedly Grant Unbridled Discretion to City Officials Violate the First Amendment?

CAMP alleges that provisions of the Festivals Ordinance grant unbridled discretion to city officials, in violation of the First Amendment, because (1) the Chief of Staff may impose "special limitations" on certain neighborhoods "if in the opinion of the Chief of Staff there are special considerations warranting such limitations," see Festivals Ordinance § 138-201A(d); (2) city officials, including Neighborhood Planning Units and city council members, may review and comment on the permit application, see id. § 138-201B, -202; and (3) Atlanta fails to assert a compelling interest for the content-based exemption of city-sponsored events, see

id. §§ 138-187, -188.  We discuss each challenge in turn.

CAMP challenges the ability of the Chief of Staff to impose "special limitations" on certain neighborhoods "if in the opinion of the Chief of Staff," special considerations are necessary, id. § 138-201A(d), but CAMP misreads the statute.  "The plain meaning that [courts] seek to discern is the plain meaning of the whole statute, not of isolated sentences."  Beecham v. United States, 511 U.S. 368, 372, 114 S. Ct. 1169, 1671 (1994).  When read in its entirety, the Festivals Ordinance does not grant unbridled discretion to the Chief of Staff selectively to impose content-based limitations on permit applicants.

Section 138-201A governs the establishment of and restrictions on Festival Districts.  Festivals Ordinance § 138-201A.  The Chief of Staff may consider the location of parks and police zones to establish these districts.  Id. § 138-201A(b).  To impose "special limitations," the Chief of Staff may consider "traffic, public safety, [and] limitations contained in any Master Plan adopted by [the city] Council."  Id. § 138-201A(d).  "Any such limitations, to be effective, must be noted in writing by the Chief of Staff on the . . . Festival District maps . . . , and shall be separately signed and dated . . . ."  Id. § 138-201A(d).

These limitations are content-neutral because the Festival Districts and the accompanying limitations are established before the submission of a festival

39

permit.  See id. § 138-201A(a); Forsyth County v. Nationalist Movement, 505 U.S. 123, 133–34, 112 S. Ct. 2395, 2403 (1992) (striking down a provision that granted unbridled discretion because it was content-based).  Because it is content-neutral, this provision "is not open to the kind of arbitrary application that [we have] condemned as inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view."  Heffron v. Int'l Soc'y for Krishna Consciousness, 452 U.S. 640, 649, 101 S. Ct. 2559, 2565 (1981).  This provision does not grant unbridled discretion to the Chief of Staff.

The ability of Neighborhood Planning Units and city council members to "comment" on the permit applications, see Festivals Ordinance §§ 138-201(21), -202, is likewise a content-neutral restriction that passes constitutional muster.  An applicant must provide notice to Neighborhood Planning Units and city council members, see id. § 138-201(21), and city officials "shall review the application, endorse their comments thereon, including the number of extra personnel hours estimated to be required," see id. § 138-202.  Nothing in the Festivals Ordinance confers Neighborhood Planning Units, city council members, or any other department the authority to grant or deny a permit.

The Chief of Staff "shall be charged with the responsibility and authority" to

grant permits, and the Festivals Ordinance provides discrete criteria that circumscribe the discretion of the Chief of Staff. See id. § 138-203. Sections 138-201(21) and 138-202 do "not delegate overly broad licensing discretion to a government official." Forsyth, 505 U.S. at 130, 112 S. Ct. at 2401. The provisions do not grant city officials, other than the Chief of Staff, licensing authority at all.

CAMP also challenges the exemption for "city-sponsored events." Festivals Ordinance § 138-187, -188. Section 138-188 provides that the Festivals Ordinance "shall not apply to a city-sponsored event." Id. § 138-188. A "city-sponsored event" is "a public event that is directly related to a recognized function of city government and which is in major part initiated, financed and executed by the City." Id. § 138-187. CAMP argues that the exemption for city-sponsored events is content-based discrimination for which Atlanta fails to provide a compelling reason. The district court concluded that the exemption was constitutional and granted partial summary judgment to Atlanta because "there [was] no evidence that a government event has impermissibly preempted private speech" and "the issue of co-sponsorship is not properly before the court on this facial challenge." We disagree.

The governmental exemption grants unbridled discretion to city officials because it lacks "narrow, objective, and definite standards to guide" the application

41

of the exemption. Shuttlesworth v. City of Birmingham, 394 U.S. 147, 151, 89 S. Ct. 935, 938 (1969). "Nothing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary" grant of an exemption. Forsyth, 505 U.S. at 133, 112 S. Ct. at 2403. The provision does not provide objective criteria that limit the ability of city officials to discriminate based on the viewpoint of the speaker or the content of the speech because Atlanta could arbitrarily decide to "initiate[], finance[], and execute[]" "in major part" the event of a private organization.

"A government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" Forsyth, 505 U.S. at 130, 112 S. Ct. at 2401 (quoting Heffron, 452 U.S. at 649, 101 S. Ct. at 2565). The lack of objective criteria in the governmental exemption "readily lends itself to harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure, [and] results in a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within its purview." Thornhill, 310 U.S. at 97–98, 60 S. Ct. at 742. Because under the Festivals Ordinance there are fewer obstacles to the expression of speech that the city endorses, the governmental

42

exemption allows the city to remove onerous burdens from organizations that the city chooses to endorse.

Atlanta argues, and we agree, that it makes "no sense for the City to have to grant itself a permit and then pay permit fees to itself," but Atlanta fails to account for the possibility that private organizations would be exempt from the Festivals Ordinance in a cosponsored event with Atlanta. Because the Festivals Ordinance exempts organizations in events that are "in major part initiated, financed[,] and executed by the City," Festivals Ordinance § 138-187 (emphasis added), the provision does not only exempt the city, but has the potential to benefit private speakers. Although courts should consider the "authoritative constructions of the ordinance [by the city], including its own implementation and interpretation of it" in the evaluation of an ordinance, Forsyth, 505 U.S. at 131, 112 S. Ct. at 2402, the government exemption leaves unbridled discretion in the hands of the city to determine which speech and speakers "in major part" to endorse or suppress. Festivals Ordinance § 138-187. Without objective standards, the exemption for city-sponsored events fails to guarantee that the exemption will not be applied in a discriminatory manner. See Women Strike For Peace v. Morton, 472 F.2d 1273, 1291 (D.C. Cir. 1972) ("Without such protection, there is too great a danger that front line officials will use their discretion to regulate views rather than to regulate

43

the mode in which those views are expressed.").  Because the exemption for city-sponsored events grants unbridled discretion through the standardless exemption of festivals that are "in major part financed, executed, and initiated" by the city, we reverse the grant of summary judgment to Atlanta.

>    *D.  Whether the 90-Day Advance Application Provision, the Liability Insurance Provision, and the Moratorium Are Unconstitutional Prior Restraints Under Either the First Amendment or the Georgia Constitution?*

The First Amendment prohibits prior restraints on speech unless they "meet the requirements for reasonable time, place and manner restrictions of protected speech in public fora."  CAMP, 219 F.3d at 1316.  To be constitutional, the regulation must be (1) content-neutral, (2) narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels for communication of the information.  Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753–54 (1989); accord Forsyth, 505 U.S. at 130, 112 S. Ct. at 2401; CAMP, 219 F.3d at 1316.  The first step to analyze whether a provision is an unconstitutional prior restraint is whether the challenged regulation is content-based.  Solantic LLC v. City of Neptune Beach, 410 F.3d 1250, 1258 (2005).  If the regulation is content-based, it is subject to strict scrutiny; if the regulation is content-neutral, it is subject to intermediate scrutiny.  Id.

The Georgia Constitution states, "No law shall be passed to curtail or

44

restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty." Ga. Const. art. I, § 1, ¶ 5. Georgia courts depart from federal constitutional free speech analysis for time, place, and manner restrictions in content-neutral speech. Statesboro Publ'g Co. v. City of Sylvania, 516 S.E.2d 296, 299 (Ga. 1999). Georgia courts have explained that the free speech rights under the Georgia Constitution are "broader" than those under the federal Constitution because Georgia requires the "least restrictive means" to regulate content-neutral speech. Id.; accord Coffey v. Fayette County, 610 S.E.2d 41, 42 (Ga. 2005). To be the "least restrictive means," a regulation must "suppress no more speech than is necessary to achieve the city's goals." Statesboro Publ'g Co., 516 S.E.2d at 95. The analysis of prior restraints, under the Georgia Constitution, is identical to the First Amendment in all other respects. Id.

CAMP argues that the requirement that applicants apply for festival permits 90 days in advance, the requirement that festival promoters furnish liability insurance, and the moratorium are prior restraints on speech in violation of the First Amendment and the Georgia Constitution. These arguments fail. We address each in turn.

45

### 1. The 90-Day Advance Application Provision Is Not an Unconstitutional Prior Restraint Under Either the First Amendment or Georgia Law.

CAMP argues that the 90-day advance application provision is an unconstitutional prior restraint of speech because it is not substantially related to a legitimate government interest. We disagree. Because the 90-day advance application is the "least restrictive means" to further the legitimate interests of Atlanta in public health and safety, it satisfies both the Georgia Constitution and the First Amendment of the United States Constitution.

First, the 90-day advance application requirement is content-neutral. "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based." Solantic, 410 F.3d at 1259 (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 639, 114 S. Ct. 2445, 2457 (1994)). The requirement that festival applicants apply 90 days in advance is content-neutral because it applies equally to all festival permit applicants without reference to the content of the festival. See CAMP, 219 F.3d at 1317. Because the requirement of a 90-day advance application is content-neutral, Atlanta has a lower burden to sustain its constitutionality.

Second, the 90-day advance application requirement is also the "least restrictive means" of regulation because it "suppresses no more speech than is

necessary to achieve the city's goals." Statesboro Publ'g Co., 516 S.E.2d at 299. Atlanta persuasively contends that the 90-day advance application requirement is necessary because city departments and the Chief of Staff require at least 45 days to review the application. "A municipality needs some time to decide whether to grant the permit and if so whether to impose conditions on the grant." Church of Am. Knights of Klu Klux Klan v. Gary, 334 F.3d 676, 682–83 (7th Cir. 2003) (upholding a 45-day advance notice provision). Atlanta presented testimony from city officials that the 45-day review process is necessary for the police, fire, and sanitation departments to confer and review the application. There is no evidence in the record to suggest that Atlanta could require less time to further the significant interests of the city in the safety and health of the population. See CAMP, 219 F.3d at 1318.

The 90-day requirement also leaves 45 days for the applicant to seek judicial review of a denial for a permit. Adequate time for judicial review of the denial is necessary to avoid the advance application requirement from being "administered in a manner which would lend an effect of finality to the" denial by Atlanta. Freedman, 380 U.S. at 58, 85 S. Ct. at 739. "Only a procedure requiring a judicial determination suffices to impose a valid final restraint." Id. The Festivals Ordinance allows ample time for the applicant to seek judicial review of the denial

47

of the lack of which resulted in the invalidation of a previous version of the Festivals Ordinance. See CAMP v. Atlanta, Civil Action No. 1:96-CV-407A-JEC, at 41–42 (N.D. Ga. April 9, 1999). The relationship between the 90-day time frame and the interests of public health and safety is "logical and practical." CAMP, 219 F.3d at 1318.

CAMP argues that the provision could be more narrowly tailored if the number of days that an applicant must file in advance were related to the number of estimated attendees, but Atlanta presented testimony from Canady, the Special Events Manager, that the size of the festival is only one factor in the amount of time required to approve a festival: "first-time" events require more time to process and the Chief of Staff and other city departments require seven days to review the application regardless of the size of the festival. Because the Festivals Ordinance requires a festival permit only for the events that require stages, barricades, utility poles, police presence, etc., see Festivals Ordinance § 138-209, the requirement targets proposed events that pose the greatest risk to public health and safety. CAMP fails to identify what speech the 90-day advance application requirement unnecessarily suppresses. The 90-day advance application requirement is the "least restrictive means" to accomplish the goals of Atlanta to promote public health and safety. Statesboro Publ'g Co., 516 S.E.2d at 95.

48

Third, the 90-day advance application requirement leaves open alternative channels of communication. The Festivals Ordinance provides that "[n]othing in this article shall be construed to prevent members of the public from assembling in the parks or streets for the purpose of making any speech or conveying any message to the public . . . without holding an outdoor festival permit . . . ." Festivals Ordinance § 138-209. Although CAMP may not "erect stages, barricades, utility poles, booths, tents or other temporary structures," id., we have stated that "benefits conferred by an outdoor festival permit are not essential to the message of CAMP, rather they are convenient mechanisms for increasing the efficiency with which CAMP might choose to communicate its message." CAMP, 219 F.3d at 1320. The Constitution requires only that Atlanta leave open an alternative channel of communication, not the alternative channel of communication CAMP desires. See ISKCON Miami, Inc. v. Metro. Dade County, 147 F.3d 1282, 1290 (11th Cir. 1998). We affirm the judgment of the district court that the 90-day advance application requirement is not an unconstitutional prior restraint under either the First Amendment or the Georgia Constitution.

### 2. The Liability Insurance Requirement Is Not an Unconstitutional Prior Restraint.

CAMP contends that the liability insurance requirement is unconstitutional because "[t]here is no proof in the record to support either the insurance amount of

49

the requirements to have insurance." See Festivals Ordinance § 138-205(e). We affirm the decision of the district court. Because the liability insurance is unrelated to the speech expressed and it is limited to festivals with over 10,000 attendees, section 138-205(e) does not violate the First Amendment or the Georgia Constitution.

First, the liability insurance requirement is content-neutral. To be content-neutral, a fee may not be based on "the amount of hostility likely to be created by the speech based on its content." Forsyth, 505 U.S. at 134. The amount of liability insurance required by the Festivals Ordinance is equal across all festivals with an estimated attendance of over 10,000 people. See 138-205(e). There is no evidence in the record to suggest that the amount of liability insurance is somehow tied to the controversial nature of the proposed festival. Because "[t]he required amount and the cost of the insurance depend only on the size of the event and the nature of the facilities involved in it," the liability insurance requirement is content-neutral. Thomas v. Chi. Park Dist., 227 F.3d 921, 925 (7th Cir. 2000), aff'd, 534 U.S. 316, 122 S. Ct. 775 (2002).

Second, the liability insurance requirement is also the least restrictive method to further the goal of public safety. Only festivals with an estimated attendance of 10,000 people are required to furnish liability insurance. See

50

Festivals Ordinance 138-205(e). The amount of liability insurance required by the Festivals Ordinance is necessary because the insurance "must protect the City of Atlanta [and] its officers . . . from any and all claims damages to property and or bodily injury." Id. § 138-205(e)(2). There is no evidence in the record that the amount of liability insurance required is excessive.

Third, as we discussed earlier, the ability of the public to assemble without a festival permit leaves open ample alternative channels for communication. See § 138-209. The liability insurance requirement does not impose an unconstitutional prior restraint under either the First Amendment or the Georgia Constitution. We affirm the judgment of the district court that the requirement of liability insurance does not impose an unconstitutional prior restraint.

### 3. The Moratorium Was Not a Prior Restraint.

CAMP also argues that the moratorium imposed by Atlanta from November 27, 2002, until January 13, 2003, was an unconstitutional prior restraint on speech, but CAMP fails to establish that the moratorium affected any constitutionally protected speech. "The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." Alexander v. United States, 509 U.S. 544, 553, 113 S. Ct. 2766, 2773 (1993) (internal quotations and citations omitted).

51

"Prior restraints have also been found where the government has unbridled discretion to limit access to a particular public forum." Cooper v. Dillon, 403 F.3d 1208, 1215 (11th Cir. 2005).

The moratorium did not "limit access to a particular public forum," id., because the effect of the moratorium was a repeal of the Festivals Ordinance. CAMP conceded at oral argument that Atlanta was free to repeal the ordinance without violating the First Amendment, and CAMP conceded that, in the absence of the ordinance, Atlanta was not obligated to provide CAMP or anyone else the municipal services that pertain to outdoor festivals. After it extended these benefits to the public through the Festivals Ordinance, Atlanta was constitutionally obliged to provide these services in an even-handed manner consistent with the First and Fourteenth Amendments, but Atlanta was not constitutionally required to provide stages or barricades during the moratorium.

Although CAMP would have been unable to erect stages, barricades, or utility poles without a festival permit, the moratorium did not abridge the right of CAMP to express speech. The moratorium on the issuance of permits was content-netural and restricted benefits not granted under either the United States or Georgia Constitutions. The moratorium did not impose a prior restraint on constitutionally

52

protected speech. Because the moratorium did not violate either the Georgia Constitution or the United States Constitution, we affirm the district court.

## IV. CONCLUSION

We grant in part the motion to dismiss by Atlanta, and vacate and remand with instructions to dismiss in part because CAMP lacks standing to challenge provisions that allow the Chief of Staff to deny a permit if the applicant has failed to pay fees or perform a cleanup plan, Festivals Ordinance § 138-207(b)(7), (8); and impose higher permit fees for commercial events than noncommercial events, id. § 138-205. We deny in part the motion to dismiss by Atlanta because CAMP has standing to challenge other provisions of the Festivals Ordinance and the challenge by CAMP of the moratorium is not moot. Because the requirement that applicants give notice to city council members and Neighborhood Planning Units, see id. § 138-201(21), the ability of the Chief of Staff to impose "special limitations," id. § 138-201A(d), the ability of city officials to submit comments about festival permit applications, id. § 138-201, the 90-day advance application requirement, see id. § 138-201, the liability insurance requirement, id. § 138-205(e), and the moratorium are constitutional, we affirm the judgment of the district court in part. We reverse and remand in part because the exemption for city-sponsored events, see id. § 138-188, grants unbridled discretion to city

53

officials.

**VACATED and REMANDED WITH INSTRUCTIONS TO DISMISS IN PART, AFFIRMED IN PART**, and **REVERSED and REMANDED IN PART.**