*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0164a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PRIME MEDIA, INC.,

      *Plaintiff-Appellant,*

  *v.*

            No. 05-6343

CITY OF BRENTWOOD,

      *Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 02-01034—Todd J. Campbell, District Judge.

Argued: June 9, 2006

Decided and Filed: May 8, 2007

Before: MARTIN, NORRIS, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** E. Adam Webb, WEBB & PORTER, Atlanta, Georgia, for Appellant. Mary B. Ferrara, FARRAR & BATES, Nashville, Tennessee, for Appellee. **ON BRIEF:** E. Adam Webb, WEBB & PORTER, Atlanta, Georgia, for Appellant. Mary B. Ferrara, Kristin Ellis Berexa, FARRAR & BATES, Nashville, Tennessee, for Appellee. William D. Brinton, Ruth A. Holmes, Cristine M. Russell, ROGERS TOWERS, Jacksonville, Florida, Randal R. Morrison, SABINE & MORRISON, San Diego, California, Robin M. Wolpert, John M. Baker, GREENE ESPEL, Minneapolis, Minnesota, for Amici Curiae.

_____

**AMENDED OPINION**

_____

  BOYCE F. MARTIN, JR., Circuit Judge. This matter is before the Court on Prime Media, Inc.'s petition for rehearing en banc. Upon consideration of the relevant briefs and the record, we vacate our prior opinion, *Prime Media, Inc. v. City of Brentwood*, 474 F.3d 332 (6th Cir. 2007), and replace it with this amended opinion.

  Prime Media filed this lawsuit to challenge a sign ordinance of the City of Brentwood, Tennessee. In a prior appeal, this Court reversed the district court's entry of summary judgment on behalf of Prime Media, ordering the dismissal of Prime Media's constitutional challenge as applied. On remand, the district court dismissed Prime Media's remaining challenges to the sign ordinance on the basis of standing. Prime Media appeals that decision by the district court. For the following reasons, we affirm the district court's decision.

1

I.

The relevant facts of this case were set forth in the prior appeal as follows:

> In 1999, the City of Brentwood promulgated an ordinance limiting the use of billboards within the city. The purpose of the ordinance was "to maintain and enhance the environment; to promote the effective use of signs as a means of communication and economic growth; and to advance the safety and welfare of the community as it relates to the use of exterior signs in the City." Among other restrictions, the ordinance limited the size of billboards to a face area of 120 square feet and a height of six feet, the latter of which includes the length of any pole supporting the sign. As originally enacted, the ordinance also prohibited off-premises signs-namely, signs "that direct [ ] attention to a business, commodity, or service offered at a location other than the premises on which the sign is erected."

> In October 2002, Prime Media, Inc., an outdoor advertising company, applied for a permit from Brentwood to build and place billboards near Interstate 65. Relying on the ordinance, Brentwood denied the permit request on three grounds: it violated the face-size restriction because the proposed billboards would be 672 square feet in size; it violated the height restriction because the proposed billboards would rest on 50- to 73-foot poles; and it violated the off-premises restriction because the billboards would not be located on the premises that they were promoting.

> After receiving this response, Prime Media filed a lawsuit challenging the constitutionality of the sign ordinance on two grounds-that it violated the free-speech guarantees of the First (and Fourteenth) Amendment and the equal-protection guarantees of the Fourteenth Amendment. While the case was pending in the district court, Brentwood amended the ordinance to remove the off-premises restriction. The amended ordinance also added a purpose and findings section. The "[p]urpose" of the new ordinance is to "[i]mprove the visual appearance of the city while providing for effective means of communication, consistent with constitutional guarantees." The "[f]indings" of the new ordinance say that:

>> The city's zoning regulations have always included the regulation of signs in an effort to provide adequate means of expression and to promote the economic viability of the business community, while protecting the city and its citizens from a proliferation of signs of a type, size, location and character that would adversely impact upon the aesthetics of the community and threaten the health, safety and welfare of the community. The regulation of the physical characteristics of signs within the city has had a positive impact on traffic safety and the appearance of the community.

> The amendment did not alter the size and height restrictions. In response to this development, Prime Media amended its complaint to challenge the constitutionality of the modified ordinance and sought damages arising from injuries caused by the original ordinance.

*Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814 (6th Cir. 2005) (citations omitted). In addition to the changes to the ordinance discussed in the prior panel opinion, it is particularly worth noting that the permitting requirement was removed altogether. The Amended Ordinance now allows officials to inspect signs and issue municipal court citations for violations of the ordinance

only **after** they are erected. *See* Amended Ordinance § 78-421(a). Additionally, any violations of the ordinance are to be addressed by the issuance of "a citation to the municipal court," which would seem to indicate that the aggrieved party is entitled to some degree of judicial review before the ordinance will be enforced against it. *Id.* Further, a party interested in erecting a sign but seeking to avoid the citation can, if it desires, seek a letter of compliance before doing so in order to clear up any uncertainty. § 78-421(b).

II.

In its initial decision, the district court granted Prime Media's motion for summary judgment, finding that the size and height restrictions were content-neutral, but were not "narrowly tailored" to promote Brentwood's interests. The district court based its decision on Brentwood's failure to provide a factual record demonstrating how the six foot height and 120 square foot size limits, in particular, advanced the city's interest in aesthetics and traffic safety. Additionally, Brentwood failed to provide studies or analyses of alternative methods to achieve the city's interests.

Brentwood appealed the district court's decision to this Court, and a three judge panel reversed the decision. *Id.* The prior panel held that the size and height requirements imposed by Brentwood were sufficiently tailored for a content-neutral regulation. *Id.* at 821. Relying on *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808 (1984), we stated that "[a]s it was in *Taxpayers for Vincent*, so it is here: 'By banning these signs, the City did no more than eliminate the exact source of the evil it sought to remedy.'" *Prime Media*, 398 F.3d at 821.

After upholding Brentwood's height and size requirements for billboards, we addressed the two alternative grounds for affirmance raised by Prime Media: its "First Amendment facial challenge to the entire ordinance, including its challenge to numerous provisions of the ordinance that do not affect Prime Media," and its equal protection challenge to the ordinance. *Id.*

> Because the district court did not address either of these claims, we leave it to the district court in the first instance to consider them – as well as Prime Media's standing to raise them – keeping in mind that "a law's application to protected speech [must] be substantial, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, before applying the strong medicine of overbreadth invalidation."

*Id.* at 825 (quoting *Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003)). We accordingly remanded the case for consideration of the facial challenges and equal protection challenge.

Upon remand of the case, the district court dismissed Prime Media's suit for lack of standing. The district court held that Prime Media no longer met the traditional standing requirement of injury in fact after this Court held that Brentwood's size and height requirements are constitutional. Therefore, the district court reasoned that Prime Media had to rely on the "overbreadth doctrine" and third-party standing to have standing in a suit against Brentwood and its billboard ordinance. Citing a case from the Eleventh Circuit, *Tanner Advertising Group, LLC v. Fayette County, Georgia*, 411 F.3d 1272 (11th Cir. 2005), *rev'd en banc*, 451 F.3d 777 (11th Cir. 2006), the district court held that the overbreadth doctrine required that the plaintiff suffer a traditional injury in fact in order to have standing. Because the district court determined that Prime Media had suffered no injury in fact in

relation to its remaining claims,[1] Prime Media was deemed to lack standing, even under the overbreadth doctrine, and the case was thereby dismissed.

Prime Media now appeals the issue of standing to this Court.

### III.

We review a dismissal of a claim for lack of standing de novo. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004).

Prime Media argues that the district court erred by ruling that it had suffered no injury in fact and contends that it actually does have Article III standing. Prime Media's actual injury in this case was the rejection of its six proposed billboards for failure to meet, among other requirements, the size and height requirements of Brentwood's sign ordinance. Based on the prior panel's decision, however, these requirements have been found to be sufficiently tailored to pass constitutional scrutiny. 398 F.3d at 821. Therefore, despite establishing standing on this *specific* challenge to the height and size provisions, Prime Media simply lost on the merits, due to the constitutionality of the requirements as they applied to Prime Media. The remaining question is whether Prime Media still has standing to litigate its remaining claims — that numerous other provisions of the ordinance are also facially invalid under the First Amendment, and its equal protection and due process claims — even though none of these challenges are supported by an *independent* injury in fact.

In a traditional standing case, the answer would clearly be in the negative. In this case, however, Prime Media has claimed that Brentwood's ordinance is overly broad, which implicates the "overbreadth doctrine." The Supreme Court has recognized that "some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *Taxpayers for Vincent*, 466 U.S. at 798 (citing *Thornhill v. Alabama*, 310 U.S. 88 (1940)). This version of third-party standing alters the "traditional rules of standing to permit — in the First Amendment area — 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* According to Prime Media, because they rely on a claim of overbreadth, they need not demonstrate an injury in fact (separate from that under the height and size requirements) in order to establish standing to proceed.

---

[1]Insofar as we can decipher Prime Media's 45-page, 144-paragraph Amended Complaint, its remaining claims include, among others, the following: First Amendment challenges based on the unfettered discretion given city officials in granting billboard permits, the lack of procedural safeguards in the approval process, the potential for content based restriction of non-commercial speech, the favoring of commercial over non-commercial speech, the favoring of some commercial topics over others; an equal protection challenge ("The City's sign restrictions' favoritism of the speech of certain groups and organizations, while prohibiting speech by other entities that would be no more detrimental to any legitimate governmental interest, has denied to Plaintiffs and others equal protection of the law."); and an unconstitutional taking and due process claim based on the requirement that existing billboards come into compliance with the ordinance if a change in the use of the business occurs.

It is highly relevant, as discussed below, that Prime Media conceded in its Amended Complaint that Brentwood has "removed the unconstitutional permitting procedures contained in its Sign Ordinance from the Amended Ordinance." As the Amended Ordinance makes clear and Prime Media is forced to acknowledge, permits are no longer required at all before signs are posted. Rather, the Amended Ordinance simply allows the City to issue "a citation to the municipal court" for violations of the ordinance after a sign is erected and only after providing advanced notice to the owner. Amended Ordinance § 78-421.

The overbreadth doctrine compels us to take a closer look at the threshold standing requirements, which involve two related but distinct inquiries. At the outset, no plaintiff can litigate a case in federal court without establishing *constitutional* standing, which requires a showing that the plaintiff has suffered (1) an injury that is (2) "fairly traceable to the defendant's allegedly unlawful conduct" and that is (3) "likely to be redressed by the requested relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These three factors constitute "the irreducible constitutional minimum of standing." *Id.* To ignore these minimum requirements "would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of the concerned bystanders.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 473 (1982) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

The second strand of the standing inquiry involves the doctrine of *prudential* standing. Unlike constitutional standing, which involves absolute and irrevocable justiciability requirements under Article III, prudential standing is a judicially created doctrine relied on as a tool of "judicial self-governance." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Prudential standing requirements preclude litigation in federal court "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens," or where instead of litigating "his own legal rights and interests," the plaintiff instead purports to "rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499. Additionally, prudential standing includes a requirement that "the plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge Christian Coll.*, 454 U.S. at 475. Although these three prudential requirements have a "close relationship to the policies reflected in the Art[icle] III requirement of actual or threatened injury amenable to judicial remedy," the theoretical underpinnings of the two are rather distinct. *Id.* Unlike the doctrine of prudential standing, the constitutional standing requirement of a "distinct and palpable injury that is likely to be redressed if the requested relief is granted . . . states a limitation on judicial power, not merely a factor to be balanced in the weighing of so-called 'prudential' considerations." *Id.*

This overview leads us to the question of how the doctrine of overbreadth affects the requirements of standing. The overbreadth doctrine allows plaintiffs to attack the constitutionality of a statute or ordinance "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others before the court to refrain from constitutionally protected speech or expression." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988). As such, overbreadth only amounts to an exception to the usual prudential standing requirement "that a party may assert only a violation of its own rights." *Id.* An overbreadth claim can instead proceed "with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Broadrick*, 413 U.S. at 612. Thus, in an appropriate First Amendment overbreadth claim, a plaintiff whose conduct is regulated by a rule of law is permitted to challenge the constitutionality of that particular rule of law regardless of the fact that a more circumscribed version of that rule of law could be applied in a constitutional fashion to prohibit the plaintiff's conduct. Because overbreadth creates an exception only to the prudential standing inquiry, the Supreme Court has made clear that the injury in fact requirement still applies to overbreadth claims under the First Amendment. *Am. Booksellers Ass'n*, 484 U.S. at 392-93 (holding that "[t]o bring a cause of action in federal court requires that plaintiffs establish at an irreducible minimum an injury in fact; that is, there must be some threatened or actual injury resulting from the putatively illegal action."); *see also Sec'y of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 958 (1984) ( "The crucial issues [for overbreadth standing] are whether [the plaintiff] satisfies the requirement of injury-in-fact, and whether [the plaintiff] can be expected satisfactorily to frame the issues in the case."). Even though Prime Media advances an overbreadth challenge, it is thus still required to show an injury in fact to challenge the provisions of the ordinance that are yet to be litigated.

Prime Media's standing with regard to the size and height requirements does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions. This issue — whether a party who has injury in fact standing to challenge a particular provision of a law has, by virtue of that injury alone, overbreadth standing to challenge *other* provisions of the same statute or ordinance — has recently received substantial attention in the Eleventh Circuit. The district court cited some of this case law in its opinion and the parties have vigorously argued over its significance to this appeal. Since we heard oral arguments in this case, the Eleventh Circuit appears to have definitively and, in our view, correctly answered the question.

In *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006), the Eleventh Circuit observed that "[a] plaintiff who has established constitutional injury under *a provision* of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under *that provision*." (emphasis added). Hence, "[t]he overbreadth doctrine allows plaintiffs to bring a facial challenge to the provisions under which the plaintiff suffered an 'injury in fact.'" *Id*. The court emphasized that the Supreme Court has "reaffirmed the 'independent obligation' of federal courts to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute." *Id*. at 1273 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 233 (1990), *modified in part on other grounds in City of Littleton v. Z. J. Gifts D-4, L.L.C.*, 541 U.S. 774, 782 (2004). Thus, the *CAMP* court concluded that a plaintiff is required to establish injury in fact as to each provision challenged, even under the overbreadth doctrine. *Id*. *See also KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1267 (11th Cir. 2006) (following *CAMP* and holding that a plaintiff may bring an overbreadth claim to challenge only those provisions of a law that "affect its activities" where those provisions "actually caused [it] injury").

We agree with the Eleventh Circuit's approach to this issue, as it follows directly from the Supreme Court's analysis in *FW/PBS*. In approaching the question of standing, the *FW/PBS* Court simply addressed the injury in fact question on a provision-specific basis, implicitly rejecting the idea that an injury in fact under one provision creates standing to challenge other distinct provisions of the ordinance. The opposite approach — conferring standing based on an independent provision of a statute or ordinance, merely because they are codified under the same heading — would be the epitome of advancing form over substance. The critical inquiry is whether the plaintiff can allege an injury arising from the specific rule being challenged, rather than an entirely separate rule that happens to appear in the same section of the municipal code. Thus, as this case presently stands, even though it is undisputed that Prime Media had standing to challenge the Brentwood billboard height and size requirements, it must separately establish an injury in fact under the numerous other provisions that it seeks to challenge.

Although Prime Media primarily seeks to make out an overbreadth challenge without showing an actual injury under many of the challenged provisions, there is one provision of the ordinance that raises a close question of actual injury. Prime Media claims that the ordinance imposes a permitting requirement that gives local officials impermissibly broad discretion in determining what types of signs can be posted. As we have previously held, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subjected to the law may challenge it facially without the necessity of applying for, and being denied, a license." *G & V Lounge v. Michigan Liquor Control Commission*, 23 F.3d 1071, 1075 (6th Cir. 1994). Such a licensing requirement "constitutes a prior restraint and may result in censorship." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). Thus, the prior restraint of a licensing provision coupled with unbridled discretion itself amounts to an actual injury. *See G & V Lounge*, 23 F.3d at 1075 ("This prior restraint constitutes a concrete and particularized actual injury in fact."). This rule is consistent with our analysis of the overbreadth doctrine's impact on Constitutional standing requirements — the requirement of an

actual injury is not obviated by an overbreadth or prior restraint claim, but the prospect of prior restraint and resulting self-censorship can itself constitute the required actual injury.

Despite Prime Media's arguments that the ordinance contains a prior restraint, the pleadings and the ordinance itself make clear that the opposite is true. As Prime Media concedes, the amended ordinance no longer contains a permitting or licensing requirement. No government permission is therefore required prior to the posting of a sign. Although the amended ordinance provides for a letter of compliance to allow a prospective sign-builder to ensure that its sign is in compliance with the statute, this provision is in no way a requirement, and can only serve to help the entity in question in addressing whether its planned sign complies with the ordinance. *See* Amended Ordinance § 78-421(b). Calling the letter of compliance a prior restraint does not make it so.

The same can be said for the city's ability to enforce the sign ordinance, which only takes effect once a sign is erected. This provision raises no penal implications that could be said to result in self-censorship. If a sign is in violation of any of the regulations once it is erected, the owner is first issued written notice of non-compliance. Ten days after this notice — a period that can be extended by 30 days if "good faith efforts are made to bring a sign into compliance" — a "citation to municipal court shall be issued." Amended Ordinance § 78-421(a). The ordinance provides for no penalties for noncompliance that could be said to result in self-censorship. Rather, an aggrieved party in receipt of a municipal court citation is presumably allowed some judicial review at this point to simply determine whether its sign should remain standing, without the imposition of a fine or other penalty.[2] In sum, the party interested in posting a sign can do so without any permitting requirement, and can resolve any disputes about compliance either after the sign is erected without risking any punishment, or beforehand by seeking an advisory letter of compliance in advance. This regime cannot be characterized as a prior restraint, and with no prospect of censorship, creates no cognizable injury to Prime Media.

There is little dispute that the remaining portions of the ordinance have not caused and do not imminently threaten any injury to Prime Media. If it had attempted to produce a billboard which complied with the height and size requirements, and was threatened with rejection or regulation under the other challenged ordinance provisions, there would arguably be a cognizable injury in fact. Even if it had articulated some plans that it had developed to erect such a sign, but was discouraged from doing so because it was destined to lose based on one of the ordinance's substantive provisions (i.e. other than the so-called permitting provision), Prime Media might have a claim of an imminent, threatened injury. However the record bears no evidence of such a development. As a result, Prime Media has not been subject to or affected by the other ordinance provisions challenged in its remaining claims.[3]

Prime Media's claims under the provisions of the ordinance other than the size and height requirement could only involve injuries that would align more clearly with those the Supreme Court

---

[2] If there in fact are some penal implications for erecting a non-conforming sign, they are not apparent from the face of the ordinance, and should only be addressed in an as-applied challenge with a more developed record. *See, e.g., Rust v. Sullivan*, 500 U.S. 173, 183 (1991). Suffice it to say that Prime Media has not identified any such implications in this case.

[3] Further, because overbreadth is restricted to the First Amendment context, it would be of no avail to Prime Media with regard to its due process/takings claim, which lacks any First Amendment connection. Even so, because this claim stumbles over the initial injury in fact hurdle, it can similarly be dismissed for lack of standing without reaching the overbreadth exception. The equal protection claim could hypothetically present a closer question, as it is intertwined with First Amendment free-speech rights, but this is similarly a question we need not resolve due to the lack of actual injury. Not only has Prime Media failed to plead any facts that would indicate that *it* has been denied equal protection or due process, or been subject to a taking without compensation, it has not even articulated a factual scenario whereby the ordinance threatens its equal protection or due process rights.

has described as "conjectural or hypothetical," rather than "palpable and distinct," rendering them insufficient to establish an injury in fact. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"). For example, as part of a laundry list of claims, its amended complaint states that the ordinance impermissibly favors commercial speech over non-commercial speech, with no explanation of how such favoritism affects Prime Media (such as an allegation that it has enlisted non-commercial clients on whose behalf it has agreed to build signs). Further, Prime Media alleges that the ordinance favors "some commercial topics over others," again without explaining how this favoritism operates or how it presents any prospective harm to Prime Media. Although Prime Media is not a resident of Brentwood and is in the business of erecting billboards, it purports to challenge provisions of the ordinance that prohibit residents from posting "snipe signs" (those attached to trees or poles), balloons, banners, or pennants. It challenges the City's decision to explicitly *allow* traffic directional or warning signs, private street or road name signs, official signs or notices required to be displayed by a court or public agency, signs denoting a property as historic, decorative flags, holiday and seasonal signs, and temporary free standing real estate signs, residential subdivision signs, bed and breakfast lodge signs, and of course, the ever-troublesome sports scoreboard, whose presence in Brentwood must truly trouble Prime Media. The list goes on and on, and the reader of Prime Media's complaint is left only to wonder about how Prime Media could be harmed by the provisions of the ordinance that prohibit or allow particular types of signs entirely unrelated to its line of business. With respect to these claims, Prime Media has clearly failed to allege the specific facts necessary to demonstrate standing. *See FW/PBS*, 493 U.S. at 231 ("It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" (internal citations omitted)).

These claims are entirely speculative and abstract, and present a prime example of the significance of Article III standing requirements, because in order to address them, a federal court would have to take on the legislative role of speculating about the impact of the ordinance, rather than adjudicating an actual case or controversy. Prime Media has not, therefore, been injured or threatened with injury as a result of enforcement of the other provisions of Brentwood's ordinance and lacks standing to challenge them, even under the overbreadth doctrine.[4]

In short, Prime Media has not, in connection with its remaining claims, suffered an injury that would be redressed by a favorable decision, as is required to establish constitutional standing here. Granting standing for Prime Media to challenge the separate provisions of the ordinance as overbroad would be to ignore the constitutional requirement of injury in fact and would allow the overbreadth exception to prudential standing requirements to swallow the constitutionally mandated injury in fact requirement for standing. Even though the overbreadth doctrine allows some plaintiff to bring such a challenge, she still must have suffered an injury in fact for a case or controversy to be present under Article III. *See Adland v. Russ*, 307 F.3d 471, 477-78 (6th Cir. 2002).

---

[4]As an example of how overbreadth *could* have been relevant in this case, assume, hypothetically (and without delving too deeply into the merits of the prior appeal), that instead of approving altogether of the size and height requirements, the prior panel had more narrowly ruled that these requirements were constitutional as applied to the signs Prime Media wanted to build — i.e. they were no broader than necessary to advance traffic safety and aesthetic interests with regard to Prime Media's proposed billboards, leaving unresolved whether they were broader than necessary with regard to smaller or more discreet billboards owned or used by hypothetical plaintiffs not before the Court. In that case, Prime Media would still have had an injury in fact based on the rejection of its billboard under the height and size requirements. Further, even though the ordinance was deemed constitutional as applied to Prime Media, the overbreadth doctrine could have allowed it to make out a facial challenge to the size and height requirements on behalf of other prospective plaintiffs, thus acting as an exception to the normal rule of prudential standing that a party can typically only challenge a violation of its own rights. The threshold requirement of an injury in fact would be unchanged, however.

A rough, down-home formulation of the combined effect of overbreadth and standing might be: "the overbreadth stand-er is usually the as-applied loser."

> Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution. It adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful. This personal stake is what the Court has consistently held enables a complainant authoritatively to present to a court a complete perspective upon the adverse consequences flowing from the specific set of facts undergirding his grievance.

*Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 220-21 (1974). It is that authoritative presence in court which Prime Media does not have in this case.

It may well be that the City of Brentwood's sign ordinance is partially, or largely, unconstitutional. However, Prime Media does not possess the essential elements that a plaintiff needs in order to challenge the ordinance in federal court. Standing requirements are in place for a number of reasons. We must be silent in disputes best left to the political arena. *Luther v. Borden*, 48 U.S. (7 How.) 1 (1849). We must turn away cases which would result in advisory opinions. *Plaut v. Spendthrift Farm, Inc.* 514 U.S. 211 (1995). Additionally, in cases such as this, the false plaintiff could establish a poor precedent, either due to inadequate incentives to vigorously pursue the litigation, or inadequate factual development due to the lack of any concrete injury. Such a result might later prevent a truly injured plaintiff from bringing her own truly meritorious lawsuit. These policies behind the constitutional standing requirement explain why we must refuse to hear cases involving plaintiffs who have not suffered an injury in fact, the overbreadth doctrine notwithstanding.

For the foregoing reasons, we AFFIRM the district court.