*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0407p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EAST BROOKS BOOKS, INC.,
                    *Plaintiff-Appellant,*

v.                                                          No. 08-5958

SHELBY COUNTY, TENN., et al.,
                    *Defendants-Appellees,*

ROBERT E. COOPER, JR., STATE OF
TENNESSEE ATTORNEY GENERAL,
          *Intervenor Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-02101—S. Thomas Anderson, District Judge.

Argued: April 20, 2009

Decided and Filed: November 25, 2009

Before: BOGGS, MOORE, and SUTTON, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Frierson M. Graves, Jr., BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, Memphis, Tennessee, for Appellant. Robert B. Rolwing, ASSISTANT COUNTY ATTORNEY, SHELBY COUNTY GOVERNMENT, Memphis, Tennessee, Steven A. Hart, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. **ON BRIEF:** Michael F. Pleasants, Sr., PLEASANTS LAW FIRM, Memphis, Tennessee, for Appellant. Robert B. Rolwing, ASSISTANT COUNTY ATTORNEY, SHELBY COUNTY GOVERNMENT, Memphis, Tennessee, Steven A. Hart, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, Thomas Roane Waring III, CITY ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellees.

BOGGS, J., delivered the opinion of the court, in which SUTTON, J., joined. MOORE, J. (p. 15), delivered a separate opinion concurring only in the judgment.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.   This is the second of two related actions challenging Tennessee's Adult-Oriented Establishment Registration Act of 1998, Tenn. Code Ann. § 7-51-1101 *et seq.,* (the "Act" or "Tennessee Act"), a county-option law adopted by Shelby County, Tenn.   Plaintiff-Appellant East Brooks Books, Inc. ("Plaintiff") operates two bookstores that sell non-obscene sexually oriented material and restrict admission to adults only.   On February 14, 2008, Plaintiff filed suit in the United States District Court for the Western District of Tennessee, naming Shelby County and the City of Memphis as defendants, seeking preliminary and permanent injunctions, as well as a declaratory judgment, on the grounds that the Act is unconstitutional on its face and as applied to Plaintiff.   The Attorney General of Tennessee was granted leave to intervene to defend the constitutionality of the Act.   Plaintiff's motion for a preliminary injunction was denied. Plaintiff appeals from the denial of its motion for a preliminary injunction.   We now affirm the district court's denial of the preliminary injunction.

**I**

The Tennessee Act is described in detail in the related action challenging its constitutionality, *Entertainment Prod., Inc. v. Shelby County, Tenn.*, No. 08-5494.   This Plaintiff challenges the Tennessee Act on six grounds, some of which duplicate the substance of the claims made by the plaintiffs in *Entertainment Productions*.   Here we address only those claims that were not resolved by our opinion in that case.

**II**

**A**

Plaintiff's first argument is that the definition of "adult bookstore" violates the Equal Protection Clause.   The Tennessee Act regulates "adult-oriented establishments," which include "adult bookstore[s]":

> "Adult bookstore" means a business that [1] *offers, as its principal or predominate stock or trade, sexually oriented material*, devices, or paraphernalia, whether determined by the total number of sexually oriented materials, devices or paraphernalia offered for sale or by the retail value of such materials, devices or paraphernalia, specified sexual activities, or any combination or form thereof, whether printed, filmed, recorded or live, *and* [2] *that restricts or purports to restrict admission to adults or to any class of adults*. The definition specifically includes items sexually oriented in nature, regardless of how labeled or sold, such as adult novelties, risqué gifts or marital aids;

Tenn. Code Ann. § 7-51-1102(1) (emphasis and numeration added). A bookstore will be deemed "adult" under the Act only if, first, its "principal or predominate stock" consists of sexually oriented or adult materials, and second, if it "restricts or purports to restrict" its premises to adults. Plaintiff argues that the second criterion makes the Act under-inclusive, in violation of the Equal Protection Clause. While a bookstore with a predominantly adult stock that excludes minors from its premises is subject to the Act, an identical bookstore that does not so restrict admission – by, for example, setting up a "small front room" containing its insignificant stock of non-adult materials – is not subject to the Act. Plaintiff argues that distinguishing between these two types of bookstores constitutes unequal treatment without a rational basis. The rational basis for the distinction is absent, Plaintiff maintains, because both types of bookstores are equally likely to produce the adverse secondary effects targeted by the Act, and no rationale supports exempting from regulation adult bookstores that admit minors. Appellant's Br. at 21-22.

Equal protection of the laws guaranteed by the Fourteenth Amendment "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (citations omitted). The Supreme Court has stated that courts will "uphold the legislative classification ," if "a law neither burdens a fundamental right nor targets a suspect class, . . . so long as it bears a rational relation to some legitimate end." *Ibid*.

In this case, no "suspect class" is targeted. Nor does Plaintiff argue that a fundamental right associated with the freedom of expression is burdened.[1] Plaintiff

---

[1]Nor could it be successfully argued that a fundamental right is implicated in this context, notwithstanding the fact that the Act obviously regulates expressive activity. This court has explained that:

concedes that this classification needs only a rational basis to survive constitutional scrutiny. Appellant's Br. at 21-22. "Under the rational basis standard, a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Richland Bookmart v. Nichols*, 278 F.3d 570, 576 (6th Cir. 2002) (quoting *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 77 (2001)). "[A] law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer*, 517 U.S. at 632.

As an initial matter, we note that the bookstores allegedly advantaged by an exemption from the Act are probably few in number, if any such establishments exist at all. Tennessee law prohibits the display of adult material "anywhere minors are lawfully admitted." Tenn. Code Ann. § 39-17-914; *Davis-Kidd Booksellers v. McWherter*, 866 S.W.2d 520 (Tenn. 1993). Any bookstore "principally or predominantly" devoted to adult merchandise that wishes to avoid regulation as an "adult-oriented establishment" and sets up a small general-merchandise section, to which minors are admitted, runs a high risk of violating this law and incurring criminal penalties.[2] It is unsurprising,

---

> Although in some cases the First Amendment is violated because "the underinclusiveness of a law – i.e., the failure of the government to regulate other, similar activity – may give rise to a conclusion that the government has in fact made an impermissible distinction on the basis of the content of the regulated speech," such a conclusion is not possible where the content of the differently regulated speech is "virtually identical."

*Richland Bookmart v. Nichols*, 278 F.3d 570, 575 (6th Cir. 2002) (quoting *DLS v. City of Chattanooga*, 107 F.3d 403, 412 n.7 (6th Cir. 1997)). Since Plaintiff's claim is predicated on the assumption that the regulated and the unregulated "speech" – *i.e.*, adult merchandise – is "virtually identical," there can be no risk of government's invidious discrimination against particular content of speech.

[2]To be sure, a "high risk" is not a certainty: a store that sells some adult materials and admits minors to its premises may avoid sanctions if the adult material is made inaccessible to minors as specified § 39-17-914(b) (*e.g.*, by taking "[r]easonable steps . . . to prevent minors from perusing the material," or by locating the adult material in "an area restricted to adults"). While Defendants may be exaggerating when they assert that such stores do not exist, it does seem difficult for a store that sells enough adult materials to constitute a "principal or predominate" share to take the necessary "reasonable steps" to prevent minors from seeing that material. A bookstore that seeks to avoid the Tennessee Act would find it difficult to comply with § 39-17-914 – and in this light, such a bookstore is not truly advantaged by comparison with a similar store that is subject to the Act but does not run a high risk of criminal penalties under § 39-17-914.

therefore, that Plaintiff does not identify any actual bookstores in Shelby County that meet the first, but not the second, criterion of an "adult bookstore" under the Act.

Even if the kinds of bookstores Plaintiff describes exist, or, as Plaintiff suggests, will come into existence as operators "scramble to establish a small front room of some minor amount of non-adult materials" into which minors are admitted, Appellant's Br. at 23, the "classification" does not lack a rational basis. "Th[e] [rational-basis] standard permits a court to hypothesize interests that might support legislative distinctions, whereas heightened scrutiny limits the realm of justification to demonstrable reality." *Nguyen*, 533 U.S. at 77. We can readily hypothesize the state's interest in confining regulation to bookstores that meet both definitional criteria. As a matter of practice, sexually oriented businesses, including bookstores, commonly restrict admission to adults. Moreover, only those businesses that cater to adults would restrict access in this manner. Restricted access is thus a reliable indicator that the goods offered or displayed on the premises are of an adult or explicit nature. A prominent display advertising an establishment as an "adult store," moreover, is a more objective indicator that the store is of the kind the Act aims to regulate, than the mere share of its stock or trade comprised of adult materials. Hence, it is not irrational for the legislature to use the access restriction as a means of identifying those bookstores that are likely to produce adverse secondary effects targeted by the Act.

Our court has adjudicated an analogous challenge to a restriction of business hours, which applied to adult establishments offering live entertainment but excepted those offering "nonlive entertainment." *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 792 (6th Cir. 2005). We explained that so long as a regulation "furthers a substantial government interest . . . and there is no evidence of an impermissible motive on the part of" the legislature, such an exception "is not a cause for concern under rational-basis review because a government may implement its program of reform by gradually adopting regulations that only partially ameliorate a perceived evil." *Ibid.* (internal quotation marks and citations omitted); *see also Richland Bookmart*, 278 F.3d at 577-78 (holding that exempting live cabarets from operating-hour

restrictions applicable to adult bookstores was rational because the legislature took a legitimate and "plausible step-by-step approach" to combating secondary effects). The same reasoning is pertinent to this case: even if Plaintiff is correct that the exempted bookstores are as liable to produce pernicious secondary effects as the regulated bookstores, Tennessee and Shelby County are permitted to implement a gradual and incomplete solution "that only partially ameliorate[s]" such effects.

Thus, we hold that the district court did not err in determining that Plaintiff has not shown a substantial likelihood of succeeding on the merits of the challenge to the "adult bookstore" definition.

**B**

Plaintiff further claims that the prohibition on the sale, use, or consumption of alcoholic beverages is overbroad and/or not narrowly tailored, and violates the Due Process Clause. While alcohol is not explicitly prohibited in the "Prohibited activities" section of the Act, its sale or use is a specified ground for a revocation, suspension or annulment of a license:

> (a) The board shall revoke, suspend or annul a license or permit for any of the following reasons:
> . . .
>> (5) Any intoxicating liquor or malt beverage is served or consumed on the premises of the adult-oriented establishment, when an operator, employee, entertainer, or escort knew, or should have known, of the violation and authorized, approved, or, in the exercise of due diligence, failed to take reasonable efforts to prevent the violation;

Tenn. Code Ann. § 7-51-1109. Plaintiff conflates its claims that the provision is overbroad and that it is not narrowly tailored as applied to adult bookstores. While banning alcohol at adult cabarets that present live entertainment is justified by the secondary effects resulting from the "explosive combination of nude dancing and alcohol consumption," Plaintiff argues, there is no evidence connecting alcohol consumption on the premises of an adult bookstore to the targeted secondary effects. Appellant's Br. at 51.

A challenge to this provision on the basis of overbreadth is without merit. "A law is overbroad under the First Amendment if it 'reaches a substantial number of impermissible applications' relative to the law's legitimate sweep." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 387 (6th Cir. 2001) (citations omitted). Overbroad laws warrant invalidation "to prevent the chilling of future protected expression," and thus, "any law imposing restrictions so broad that it chills speech outside the purview of its legitimate regulatory purpose will be struck down." *Ibid.* A proscription on alcohol is not in itself a prohibition on any protected expression. Thus, to be persuaded by the claim that prohibiting alcohol in adult bookstores "reaches a substantial number of impermissible applications," we need to believe that the threat of license suspension for alcohol use will deter bookstore owners from offering adult fare in their establishments, or that the prohibition on the consumption of alcohol will keep out customers wishing to exercise their protected right to peruse adult-oriented materials offered by the bookstores. Neither prospect is probable, in view of the likely fact that the primary purpose of adult bookstores is to sell adult materials, and the primary purpose of an average customer in such an establishment is to purchase or view said materials. Plaintiff makes no effort to show that extending the prohibition on alcohol to adult bookstores actually and substantially chills protected expression.

While the traditional requirements of standing are relaxed in the context of a facial challenge on overbreadth grounds, Plaintiff must show that it suffered an injury that is "fairly traceable" to the allegedly unconstitutional statute for the purposes of its claim that the alcohol prohibition is not narrowly tailored as applied to Plaintiff. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348-49 (6th Cir. 2007) (citations omitted). Since no provision of the Tennessee Act has been enforced against Plaintiff's bookstores at this time, no injury to Plaintiff is apparent. Plaintiff has not even established that it has or intends to seek a liquor license, or given this court any other reason to suppose that Plaintiff is likely to lose an adult-establishment license on account of its employees' or customers' consumption of alcoholic beverages on the bookstores' premises. Even assuming, *arguendo*, that standing requirements do not bar the claim

that the Act is not narrowly tailored, Plaintiff did not demonstrate a substantial likelihood of success on the merits.

In the context of content-neutral time, place, or manner regulations, narrow tailoring does not require that the chosen measures be "the least speech-restrictive means of advancing the Government's interests." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994). This requirement is satisfied if the regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ibid.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). It requires, "in other words, that the means chosen do not burden substantially more speech than is necessary to further the government's legitimate interests." *Ibid.* (internal quotation marks omitted). Moreover, in selecting the means to advance the legitimate interest in controlling adverse secondary effects of adult entertainment, governments are entitled to rely on evidence "reasonably believed to be relevant to the problem." *729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485, 491 (6th Cir. 2008) (citing *Renton v. Playtime Theatres*, 475 U.S. 41, 51-52 (1986); *City of L.A. v. Alameda Books*, 535 U.S. 425, 438-39 (2002) (plurality); *id.* at 449 (Kennedy, J., concurring in the judgment)).

Both Tennessee and Shelby County relied on numerous reports, studies and judicial decisions with regard to the deleterious secondary effects of adult-oriented establishments. In the Ordinance that adopts the Act in the county, Shelby County notes that the County reviewed, among other evidentiary materials, "a report regarding the adverse health effects of activity commonly occurring in adult bookstores." *Ibid.* In view of this evidence, which Plaintiff does not call into doubt, Shelby County may "reasonably believe" that the availability of alcohol on the premises of *any* adult-oriented establishment – not just those that offer live or nude dancing – would magnify the adverse effects. As this court held in *Richland Bookmart*, "[i]n finding that sexually oriented businesses *as a category* are associated with numerous adverse secondary effects, the County reasonably relied on a number of prior judicial decisions finding sufficient evidence to support the connection between adverse effects and adult

entertainment when combined with alcohol consumption." *Richland Bookmart, Inc. v. Knox County, Tenn.*, 555 F.3d 512, 532 (6th Cir. 2009) (emphasis added).

Moreover, this prohibition does not burden *substantially* more speech than necessary to advance legitimate state interests, if it can be said to burden *speech* at all. As the Seventh Circuit explained in upholding a ban on alcohol in adult cabarets:

> The regulation has no impact whatsoever on the tavern's ability to offer nude or semi-nude dancing to its patrons; it seeks to regulate alcohol and nude or semi-nude dancing without prohibiting either. The citizens . . . may still buy a drink and watch nude or semi-nude dancing. They are not, however, constitutionally entitled to do both at the same time and in the same place. The deprivation of alcohol does not prevent the observer from witnessing nude or semi-nude dancing, or the dancer from conveying an erotic message.

*Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 728 (7th Cir. 2003) (citation omitted). Likewise, the deprivation of alcohol does not prevent a bookstore employee from offering sexually explicit materials for sale, nor does it prevent customers from enjoying all the merchandise such businesses have to offer.

Plaintiff claims that the prohibition is unconstitutional for yet another reason: it violates the Due Process Clause because it allegedly imposes strict liability on the owner for any violations by employees or customers. The Act states that a license or permit will be revoked "when an operator, employee, entertainer, or escort knew, or should have known, of the violation and authorized, approved, or, in the exercise of due diligence, failed to take reasonable efforts to prevent the violation." Plaintiff asserts that an *establishment's* license will be revoked if an *employee* "whose knowledge cannot be imputed to the business itself" fails to take a reasonable effort to prevent alcohol use on the premises. Appellant's Br. at 52 (quoting *Wal Juice Bar, Inc. v. City of Oak Grove, Kentucky*, No. 5:02CV-252-R, 2008 WL 1730293, at *10 (W.D. Ky. 2008)). While the district court did not address this argument, its interpretive premise is without merit. As Shelby County explains, "[a] violation by an employee imperils that *employee*'s permit," but "does not imperil the *operator's license*, unless [the operator] 'knew, or should have known of the violation and authorized, approved, or, in the exercise of due diligence,

failed to take reasonable efforts to prevent the violation.'"  Appellees' Br. at 38-39 (citations omitted; emphasis in original).  We agree, as this interpretation of the challenged provision is also compelled by the general standard for revocation of operator's licenses and employees' permits.  The Act provides for a revocation or suspension of an operator's license on the basis of an employee's actions only if an operator "has a duty to supervise conduct on the premises," and "knew, or should have known, of the violation and authorized, approved, or, in the exercise of due diligence, failed to take reasonable efforts to prevent the violation."  Tenn. Code Ann. § 7-51-1109(a)(2).  Because the Act does not punish operators of adult establishments on the basis of strict liability, we affirm the district court's determination that no substantial likelihood of success on the merits of this claim was demonstrated.

**C**

Finally, Plaintiff challenges the Act's provision on "[p]enalties for violation of part," which states:

> (a)  (1) A violation of this part shall, for a first offense, be a Class B misdemeanor, punishable by a fine only of five hundred dollars ($500), and shall result in the suspension or revocation of any license.
>
>> (2) A second or subsequent violation of this part is a Class A misdemeanor, and shall result in the suspension or revocation of any license.
>
> (b) Each violation of this part shall be considered a separate offense, and any violation continuing more than one (1) hour of time shall be considered a separate offense for each hour of violation.

Tenn. Code Ann. § 7-51-1119.  Section 7-51-1109 specifies that an operator whose license is revoked is disqualified from receiving an adult-oriented establishment license for five years.  Plaintiff argues that a punitive revocation of a license on the basis of past violations of this Act constitutes an unconstitutional prior restraint on future protected expression.

The district court declined to consider this claim on the merits because it determined that Plaintiff, who has not applied for a license nor had a license revoked,

lacked standing to challenge the penalty provision. Plaintiff protests that it need not wait for a license revocation to bring a facial challenge on overbreadth grounds. Appellant's Br. at 54-55. "[I]t is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license." *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000) (quoting *Freedman v. Maryland*, 380 U.S. 51, 56 (1965)); *see also Odle v. Decatur County*, 421 F.3d 386, 389 n.2 (6th Cir. 2005). Plaintiff does not exactly articulate a challenge on the grounds of overly broad or unbridled *discretion*. However, the essence of Plaintiff's claim is that the allegedly unconstitutional applications of this provision are substantial relative to legitimate applications because punitive revocation suppresses future protected speech "unconnected to the negative secondary effects cited as legislative justification," *Schultz v. City of Cumberland*, 228 F.3d 831, 849 (7th Cir. 2000). Treating Plaintiff's arguments charitably, we hold that Plaintiff does have standing to bring this facial challenge to the Act on the basis of its penalty provision.

Constitutional invalidity of prior restraints may result from one or both of "two evils . . . : (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) 'the risk of indefinitely suppressing permissible speech' when a licensing law fails to provide for the prompt issuance of a license." *Nightclubs, Inc.*, 202 F.3d at 889 (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 225-27 (1990)). The Tennessee Act's licensing scheme is a prior restraint on protected expression. *Odle*, 421 F.3d at 389; *see also Belew, et al. v. Giles County Adult-Oriented Establishment Board, et al.*, No. 1-01-0139 (M.D. Tenn. Sept. 30, 2005). Prior restraints are not unconstitutional per se. *Richland Bookmart, Inc.*, 555 F.3d at 533 (citing *Odle*, 421 F.3d at 389). Where license issuance is based on explicit and objective criteria, a licensing scheme passes constitutional muster when it "guarantee[s] applicants a prompt final judicial decision on the merits of a license denial and preservation of the status quo while an application or judicial review of a license denial is pending." *Odle*, 421 F.3d at 389 (citing *Freedman*, 380 U.S. at 58; *FW/PBS, Inc.*, 493 U.S. at 229-30; *City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774, 779-80 (2004)). Logically, the same

procedural guarantees required for license denials are required for license *revocations*. Furthermore, "[s]ystems of prior restraint . . . [must] also pass[] the appropriate level of scrutiny." *Deja Vu of Nashville, Inc.*, 274 F.3d at 391(citing *Freedman*, 380 U.S. at 58-59).

In *Odle*, we held that the provisions regarding license *denial* of this very Act are not unconstitutional because they comply with the procedural requirements of prompt judicial review and maintenance of status quo. 421 F.3d at 390-91. Punitive revocation of a license under § 7-51-1119 likewise complies with the two requirements. The Tennessee Act provides for a prompt final judicial decision on the merits of a license revocation: an entity whose license or permit is to be revoked or suspended is given 10 days to request a hearing before the adult-oriented establishment board ("board") to contest the revocation, § 7-51-1109(b)(2), which shall be held within 15 days of the receipt of the request, and a final decision will be rendered by the board within 22 days of the initial notice of revocation, § 7-51-1109 (b)(3). If the revocation or suspension is affirmed, "the county attorney for such county shall institute suit for declaratory judgment in a court of record in such county, within five (5) days of the date of any such affirmation." § 7-51-1109 (c)(1). Finally, "[t]he applicant shall be entitled to judicial determination of the issues within two (2) days after joinder of issue, and a decision shall be rendered by the court within two (2) days of the conclusion of the hearing." § 7-51-1109 (c)(3).**[3]** The Act also complies with the second requirement as it provides for the maintenance of the status quo "pending the final outcome of judicial proceedings to determine whether such license or permit has been properly revoked or suspended under the law." § 7-51-1109(b)(2).

---

**[3]**We note that the Act provides adopting counties with a choice: a county has the option of making subsection § 7-51-1109 (d) applicable in the county, rather than subsection (c). The salient difference between the two sections resides in the identity of the party who initiates judicial review of the administrative action and bears the burden of proof with respect to the revocation; however, the guarantee that a judicial decision will be rendered within two days of the judicial determination on license denial or revocation appears only in subsection (c). Neither party to this lawsuit indicates which section is applicable in Shelby County. Because there is no allegation or affirmative representation that subsection (d) was elected by Shelby County, and (c) appears to be the default option, we will assume that (c) is the applicable standard and express no opinion with regard to subsection (d).

Plaintiff asserts that it is not challenging the constitutionality of the licensing scheme on the grounds of inadequate procedural protections for license revocation. See Appellant's Rep. Br. at 19, 21-22. At the same time, Plaintiff does not appear to attack the substantive grounds for revocation: Plaintiff does not argue, for example, that the criteria for revocation are insufficiently objective and delegate unbridled authority to officials, or that the criteria for revocation are too numerous to be narrowly tailored to the state interest at stake. Instead, Plaintiff argues in general and opaque terms that the Act is unconstitutional because it employs punitive revocation to control protected future expression rather than to punish violators "in the ordinary sense." Appellant's Rep. Br. at 22.

Insofar as we are able to discern a legal theory behind Plaintiff's constitutional attack on the penalty provision, it rests on a misinterpretation of the Tennessee Act. Plaintiff appears to think that the procedural safeguards applicable to license revocations generally, which are set forth in § 7-51-1109, do not apply to a punitive license revocation under § 7-51-1119. Because § 7-51-1119 states that a violation "*shall*" be a misdemeanor and "*shall* result in the suspension or revocation of any license," (emphasis added), Plaintiff seems to conclude that a revocation under this section is permanent and not contestable. However, this is not a sustainable reading of the Tennessee Act. Although § 7-51-1119 does not state that the punitive revocation of a license is temporary or subject to the procedural protections required of prior-restraint schemes, the temporal and procedural limitations are clearly spelled out in § 7-51-1109. The latter section lists several grounds for license revocation, including violations of the Act's provisions – the consequences of which are addressed further in § 7-51-1119. Section 7-51-1109 explicitly states that the procedural safeguards governing license revocation contained therein apply "[n]otwithstanding anything in this part to the contrary." § 7-51-1109(b)(1). Thus, it is implausible to maintain that the procedures governing revocations generally are not applicable to punitive revocations for violations of the Act under § 7-51-1119.

We are unable to glean any alternative logic to support Plaintiff's claim that the Act is an unconstitutional prior restraint because it is not "punishment in the ordinary sense." Thus, we hold that the district court did not err in finding that Plaintiff did not show a substantial likelihood of success on the merits of this claim.

**D**

Plaintiff raises other grounds for its facial attack on the Act, all of which are waived and/or addressed by our opinion in the companion case. Plaintiff's claim that the definition of "adult cabaret," § 7-51-1102(2), renders the Act unconstitutionally overbroad was found to lack merit in *Entertainment Productions*. Plaintiff's claims that the definition of "specified sexual activities," § 7-51-1102(27), and the prohibition on "fondling," § 7-51-1114(d)(1)(D), are overbroad and/or not narrowly tailored are waived. While Plaintiff identifies these claims in its initial complaint, they are not presented in its Memorandum in Support of Motion for a Preliminary Injunction, and were therefore not addressed by the district court.[4] Lastly, Plaintiff's claim that the prohibition on touching and the buffer-zone requirement are overbroad and/or not narrowly tailored is also waived because it was not presented in its Memorandum in Support of Motion for a Preliminary Injunction and was not addressed by the district court. In any case, we rejected this claim on the merits in *Entertainment Productions*.

**III**

For the foregoing reasons, we affirm the district court's denial of the preliminary injunction.

---

[4]Even if considered on the merits, however, these challenges would fail. Plaintiff misconceives the role that the definition of "specified sexual activities" plays in the Act, treating the term, which is employed in the definition of "adult entertainment," as a prohibition. The claim that the prohibition on fondling in § 7-51-1114(d)(1)(D) unconstitutionally burdens expression would also fail on the merits for the same reasons that the challenge to the no-touching provisions did not succeed in *Entertainment Productions*. The prohibition on "fondling genitals" is surely less burdensome and easier to justify than the broader, more intrusive provisions challenged by the plaintiffs in *Entertainment Productions*.

---

**CONCURRING ONLY IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring only in the judgment. I believe that the district court did not abuse its discretion by denying the plaintiffs' motion for a preliminary injunction. I do not join the majority's opinion, and I concur solely in the judgment affirming the district court's judgment that the plaintiffs have not satisfied the requirements for a preliminary injunction of the challenged provisions.

It is important to emphasize that plaintiff waived any challenge at this time to Tennessee Code Annotated § 7-51-1114(d)(1)(D)'s prohibition on self-touching by not raising the issue in its preliminary-injunction motion or supporting memorandum. Thus, any discussion regarding the merits of a hypothetical challenge to that provision is premature.